**STATE of Minnesota, Respondent,**

v.

**John Allen KOPPI, Appellant.**

No. A09–136.

Court of Appeals of Minnesota.

March 9, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Thames, Corcoran City Attorney, Carson, Clelland & Schreder, Minneapolis, MN, for respondent.

Mark D. Kelly, St. Paul, MN, for appellant.

Considered and decided by CONNOLLY, Presiding Judge; SHUMAKER, Judge; and WORKE, Judge.

## OPINION

SHUMAKER, Judge.

In this appeal from his conviction of second-degree refusal to submit to chemical testing, appellant argues that the district court misstated the law in its jury instructions on test refusal and that the district court violated his right to due process of law when it concluded that he had a reasonable amount of time to consult an attorney. Although we agree that the district court misstated the law, the error was harmless. And the district court did not err in deciding that the appellant had a reasonable amount of time to consult an attorney. Therefore, we affirm.

## FACTS

A jury found appellant John Allen Koppi guilty of refusing to submit to chemical testing after he was arrested for driving while impaired. Koppi asks us to determine whether the district court erred in its jury instruction regarding the definition of probable cause—an element of the crime—and whether it erred in instructing the jury that, as a matter of law, Koppi was given a reasonable time to consult with a lawyer.

A police officer stopped Koppi as he drove his pickup truck at about 12:40 a.m. on July 4, 2008, because Koppi was speeding and appeared to be accelerating away from the squad car. When the officer approached the truck, he noticed that Koppi's eyes were "a red, glossy, bloodshot color," and there was a "slight odor of an alcoholic beverage" coming from him. The officer asked Koppi to get out of the truck and perform field sobriety tests. Koppi refused to perform the tests, and the officer arrested him and brought him to the police station.

At 1:04 a.m., the officer read to Koppi the implied-consent advisory in a booking room that was equipped with a video camera. Koppi acknowledged that he understood the advisory and requested an opportunity to contact a lawyer. At about 1:05 a.m., the officer gave Koppi several telephone books and the use of a telephone. Koppi said that he would need his reading glasses, and the officer arranged to have them retrieved from Koppi's truck and brought to him. A videotape in evidence showed that, as he waited for the delivery of his reading glasses, Koppi read text messages on his cell phone without eyeglasses.

Between 1:40 and 1:49 a.m., Koppi made two telephone calls to attorneys and one to his wife. He did not succeed in reaching a lawyer, and the videotape showed Koppi paging through the phone books and looking around the room. The district court characterized Koppi's conduct as "aimlessly" paging through the books and not "making any serious effort to review any of the attorney ads or to contact an attorney." When the officer asked Koppi why he had not tried to contact other attorneys, he replied: "I haven't found one that I liked."

At 2:05 a.m., the officer told Koppi that he had been given a reasonable time to contact a lawyer and asked Koppi if he would submit to breath testing. Koppi did not respond to the question, instead stating that he was still looking for a lawyer. The officer asked the question at least five times, and each time Koppi requested more time to try to contact a lawyer. Koppi insisted that the law allowed him two hours to contact a lawyer and decide whether to submit to testing. The officer then cited Koppi for test refusal.

At the close of the evidence in Koppi's trial, he requested that the court not give the CRIMJIG 29.28 instruction because, he argued, it impermissibly provided a subjective, rather than an objective, definition of probable cause. The district court declined the request and gave the full instruction. The court also instructed the jury that, as a matter of law, Koppi had been given a reasonable time to consult with a lawyer before deciding whether to submit to testing. Koppi objected to this instruction.

This appeal followed.

## ISSUES

1. Did the district court err in its instruction to the jury on refusal to submit to testing when it defined the element of "probable cause" as provided by CRIMJIG 29.28, the current pattern jury instruction on test refusal in an impaired-driving case?

2. Did the district court err by instructing the jury that, as a matter of law, it had determined that the appellant had been given a reasonable amount of time to contact an attorney prior to deciding whether to submit to a breath test?

## ANALYSIS

*Jury Instruction on Probable Cause*

The district court is allowed "considerable latitude in selecting the language of jury instructions." *State v. Baird*, 654 N.W.2d 105, 113 (Minn.2002). This court reviews jury instructions "in their entirety to determine whether they fairly and adequately explain the law of the case." *State v. Peterson*, 673 N.W.2d 482, 486 (Minn.2004). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001). The district court's decision as to what jury instructions to give is reviewed for abuse of discretion. *State v. Pendleton*, 759 N.W.2d 900, 907 (Minn. 2009). Erroneous jury instructions are reviewed under a harmless-error standard. *State v. Jackson*, 746 N.W.2d 894, 898 (Minn.2008). In completing a "harmless error impact" analysis, the inquiry is not whether the jury could have convicted the defendant without the error, but rather, what effect the error had on the jury's verdict, "and more specifically, whether the jury's verdict is 'surely unattributable' to [the error]." *State v. King*, 622 N.W.2d 800, 811 (Minn.2001) (quoting *State v. Juarez*, 572 N.W.2d 286, 292 (Minn.1997)).

A person who drives a motor vehicle in Minnesota is required to submit to chemical testing for the presence of alcohol "when an officer has probable cause to believe the person was driving ..." while

impaired, and when other circumstances, not at issue here, exist. Minn.Stat. § 169A.51, subd. 1(b) (2008). A person who refuses to submit to properly requested testing is guilty of a crime. Minn.Stat. § 169A.20, subd. 2 (2008).

■ The elements of the crime of test refusal are set forth in CRIMJIG 29.28, the current pattern jury instruction. That instruction defines probable cause as an element of the crime as follows: " 'Probable cause' means that the officer can explain the reason the officer believes it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol." 10A *Minnesota Practice*, CRIMJIG 29.28.

Koppi contends that the pattern jury instruction misstates the law of probable cause because it creates a subjective, rather than the requisite objective, standard for determining probable cause. He notes that the pattern instruction was amended in 2008 to provide that the probable-cause element is satisfied if the jury can find beyond a reasonable doubt that "the officer can explain the reason the officer believes" it was more likely than not that the defendant drove while impaired, whereas the prior instruction did not contain the quoted language.

■ The existence of probable cause depends on an objective inquiry and a review of the totality of the circumstances. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 708 (Minn.App.2008). Koppi cites *Mell* for the proposition that probable cause exists if the objective facts are such that a person of ordinary care and prudence "would entertain an honest and strong suspicion" that the crime of driving while impaired has been committed. *Mell* did not qualify the nature and degree of suspicion required to rise to the level of probable cause but rather stated that

probable cause depends on whether a person of prudence or of reasonable caution "would believe" that a crime had been committed. Thus, *Mell* focuses the analysis of probable cause on the *belief* of the person purporting to assess the facts, who in *Mell*, and here, was a law-enforcement officer. Additionally, if a law-enforcement officer is the person purporting to determine the existence of probable cause, his training and occupational experience are part of the "totality of circumstances" that must be reviewed to assess the legal accuracy of his determination. *See State v. Carlson*, 267 N.W.2d 170, 174 (Minn.1978) (in determining probable cause the court must "view the circumstances in light of the whole of the arresting officer's police experience as of the time of the arrest."); *State v. Olson*, 342 N.W.2d 638, 640 (Minn. App.1984) ("Probable cause is not based upon the 'reasonable man' concept, but upon the situation of the officer and the particular situation in which he finds himself, conditioned by his observations, information, training and experience." (quotation omitted)).

■ It is clear that an officer who claims to have performed an act upon his belief that there was probable cause for concluding that a crime had been committed is subject to the test of reasonableness of that belief; and reasonableness is assessed by an investigation of objective facts. *See State v. Sorenson*, 270 Minn. 186, 196, 134 N.W.2d 115, 123 (1965) ("[W]hether an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested."); *see also State v. Driscoll*, 427 N.W.2d 263, 265 (Minn.App.1988) ("[W]hether probable cause exists hinges on the *officer's* objective observations, not

on his subjective belief as to probable cause.") (emphasis added) (citation omitted). The issue is whether an officer had objective probable cause, not whether an officer subjectively felt he had probable cause. *Costillo v. Comm'r of Pub. Safety,* 416 N.W.2d 730, 733 (Minn.1987); *State v. Speak,* 339 N.W.2d 741, 745 (Minn.1983).

Thus, the question is whether the pattern jury instruction informs the jury of the law of probable cause, namely, that there must be an objective basis for the officer's belief that probable cause existed.

The instruction can be read to imply that the officer's merely subjective belief is not dispositive because he is also required to "explain the reason" he believed that it was likely that the driver was impaired. But we have two concerns about the language of the instruction.

First, the instruction only implies the correct law of probable cause; it does not expressly state that law. Second, the instruction fails to require that the officer explain the reason for his belief by reference to objective facts and circumstances, as mandated by law of probable cause. Taking the literal language of the instruction, an officer could testify that he believed a driver was impaired because the officer has had several years of experience in detecting and apprehending impaired motorists and has learned the general characteristics those motorists exhibit. Literally, then, the officer has testified to his belief and to the reason for his belief. He has thus satisfied the definition of probable cause in the instruction despite the absence of any reference to objective facts. Accordingly, we hold that CRIM-JIG 29.28 misstates the law of probable cause and that the district court erred in including the pattern instruction's definition of probable cause in its charge to the jury. But we hold that the error was harmless.

■ An error in the jury instructions does not require a new trial if the error was harmless. *Kuhnau,* 622 N.W.2d at 558. "An error in jury instructions is not harmless and a new trial should be granted if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *Id.* at 558–59 (citing *Pendleton,* 567 N.W.2d at 270). It can be said beyond a reasonable doubt that the incorrect instruction had no significant impact on the verdict because, despite the instruction, the jury was not left to rely on the officer's subjective belief. Rather, in explaining the reason for his belief that Koppi was impaired, the officer testified to the objective facts that gave him cause to stop Koppi's car. His testimony, therefore, supplied what is only implicit in the erroneous instruction, namely, that there were facts in the external world to which he could point to give him a completely objective basis for concluding that probable cause existed.

### Vindication of Right to Counsel

■ Koppi next argues that the district court's instruction to the jury that the court had determined that Koppi was given a reasonable time to consult an attorney before deciding whether to submit to chemical testing was tantamount to a directed verdict as to the issue of refusal to submit to testing. The district court instructed the jury on reasonable time to consult with an attorney as follows:

A driver is allowed a reasonable time to contact an attorney before deciding whether to take the test. As the judge in this case, I've already decided that [Koppi] was provided with a reasonable amount of time to contact an attorney. A driver cannot be permitted to wait indefinitely for a return call that may never come.

A peace officer is allowed to reasonably determine that a driver has had enough time. In this case[,] I've decided as a matter of law that the peace officer allowed [Koppi] a reasonable amount of time.

You, the jury, must still decide if the State has proven the elements of each offense beyond a reasonable doubt.

. . . .

... [Y]ou must still determine if the State has proven that the words and/or acts of [Koppi] constitute a refusal to test as well as whether the State has proven all the other elements of the offense.

 "[U]nder the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991). But, because of "the evanescent nature of the evidence in DWI cases," the accused is allowed a limited amount of time to contact an attorney. *Id.* Thus, the time needed to consult an attorney is limited in that it must not unreasonably delay the administration of the test. *Id.*

This court has held that certain legal issues, including the issue of right to counsel, and whether that right was fully vindicated by the officer, are inappropriate to submit to a jury for consideration. *State v. Mellett,* 642 N.W.2d 779, 785 (Minn.App. 2002), *review denied* (Minn. July 16, 2002). These determinations are similar to the questions of the propriety of a *Miranda* warning and of the proper basis for a search warrant, which are not jury issues.

*See State v. Rochefort,* 631 N.W.2d 802, 804 (Minn.2001) (determination of probable cause to issue a search warrant turns on "whether the issuing judge had a substantial basis for concluding that probable cause existed"); *Mellett,* 642 N.W.2d at 787–88 (district court's determination regarding custody and necessity of *Miranda* warning are issues of law that are independently reviewed by appellate courts).

 The right to counsel is vindicated when "the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Friedman,* 473 N.W.2d at 835 (quotation omitted). Police can vindicate a driver's right to consult with counsel if the driver either chooses to stop calling or does in fact consult with an attorney. *See Kuhn v. Comm'r of Pub. Safety,* 488 N.W.2d 838, 841–42 (Minn.App.1992) (citing *Eveslage v. Comm'r of Pub. Safety,* 353 N.W.2d 623 (Minn.App.1984)) (right vindicated when driver could not locate his own attorney and there were no other attorneys he wished to call[1]); *Saxton v. Comm'r of Pub. Safety,* 355 N.W.2d 769 (Minn.App.1984) (right vindicated where defendant asked to call an attorney, was given a telephone book, and called his wife and his employer, but failed to contact an attorney); *Shovein v. Comm'r of Pub. Safety,* 357 N.W.2d 386 (Minn.App.1984) (right vindicated where defendant was allowed to use a telephone in a booking room to call an attorney; he reached an attorney and then requested privacy to talk to him), *review denied* (Minn. Oct. 20, 1992). *See also Mell,* 757 N.W.2d at 713 (defendant's right to counsel was not violated, though only three minutes passed between deputy sheriff offering motorist a telephone and a

---

**1.** *Eveslage* was based on a since-eliminated statutory right to counsel. *Parsons v. Comm'r of Pub. Safety,* 488 N.W.2d 500, 502 (Minn. App.1992). Still, Minnesota acknowledges a limited constitutional right to consult counsel prior to testing. *Friedman,* 473 N.W.2d at 833. Thus, the factual analysis used in *Eveslage* is appropriately applied to this case.

telephone directory, and deputy's subsequent request for motorist to submit to a breath test; motorist attempted to contact his wife but not an attorney, motorist told deputy that he could not contact his attorney, motorist did not request another telephone directory or ask for more time to attempt to contact an attorney, and he affirmatively nodded his head when asked by the deputy whether he was done trying to contact his attorney).

"[W]hether a person has been allowed a reasonable time to consult with an attorney is a mixed question of law and fact." *Parsons v. Comm'r of Pub. Safety,* 488 N.W.2d 500, 501 (Minn.App.1992). This court reviews the district court's findings of fact under a "clearly erroneous" standard. *Hartung v. Comm'r of Pub. Safety,* 634 N.W.2d 735, 737 (Minn.App. 2001), *review denied* (Minn. Dec. 11, 2001); *see also* Minn. R. Civ. P. 52.01 (stating the district court's findings of fact must not be set aside unless clearly erroneous, giving due regard to court's opportunity to judge witness credibility). Once the facts have been established, the determination of whether appellant's right to counsel was vindicated is a matter of law, which this court reviews de novo. *Linde v. Comm'r of Pub. Safety,* 586 N.W.2d 807, 809 (Minn. App.1998), *review denied* (Minn. Feb. 18, 1999).

A "reasonable time" is not a fixed amount of time, and it cannot be based on elapsed minutes alone. *Kuhn,* 488 N.W.2d at 842. In considering this issue, the court balances the efforts made by the driver against the efforts made by the officer, with the focus "both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right." *Id.* A court will consider the totality of the circumstances in determining whether a driver has been given a reasonable amount of

time to consult an attorney. The following nonexclusive factors are relevant to the issue: (i) whether the driver made a good faith effort to reach an attorney; (ii) time of day that the driver was arrested, and how accessible an attorney is at that time of day; and (iii) length of time the driver has been under arrest, since delay may affect the probative value of the DWI evidence and may make prompt testing more urgent. *Id.*

Immediately after Koppi asked to speak to an attorney, the officer provided him with a telephone, directories, and his reading glasses, and gave him approximately one hour to contact an attorney. Koppi did not diligently exercise his right to consult with an attorney. Thirty-five minutes passed from the time Koppi was given a telephone until he made his first call. During the one-hour period provided, Koppi called only two attorneys and his wife. As the district court found, Koppi appeared to make no serious effort to contact an attorney during this time.

We conclude that the district court correctly determined as a matter of law that Koppi's right to counsel was vindicated because he was provided with the means and ample time to contact an attorney

*Removal of Elements from the Jury's Consideration*

The district court's determination and jury instruction that Koppi had been given a reasonable amount of time to consult an attorney, furthermore, did not deny Koppi the right to have all the elements of the refusal charge submitted to the jury as he alleges.

A defendant "is entitled to have all the elements of the offense with which he is charged submitted even if the evidence relating to these elements is uncontradicted." *State v. Carlson,* 268 N.W.2d 553, 560 (Minn.1978). "[I]t is well

settled that the court's instructions must define the crime charged." *Kuhnau,* 622 N.W.2d at 556 (citation omitted). Therefore, a district court should "explain the elements of the offense rather than simply ... read statutes." *Id.* The harmless-error standard is inapplicable when the jury is instructed that an essential element of the crime charged has been established. *See State v. Moore,* 699 N.W.2d 733, 737–38 (Minn.2005) (holding that district court's instruction that the loss of a tooth is a permanent loss of the function of a bodily member improperly infringed on defendant's right to have jury determine guilt beyond reasonable doubt on every element of charged offense).

CRIMJIG 29.28 sets forth the essential elements that must be proved beyond a reasonable doubt before an accused can be convicted of the crime of test refusal. None of the elements includes as a jury issue the amount of time to be allowed the accused to contact a lawyer. Although caselaw has acknowledged a constitutional right of an accused to consult with a lawyer before deciding whether to submit to a chemical test and has recognized that a reasonable time must be allowed for such consultation, neither caselaw nor statute makes either issue a jury question. We can draw an analogy to a *Miranda*-rights issue. A jury is not permitted to hear of a custodial confession unless the confession was voluntarily given after a *Miranda* warning. But it is the court, rather than the jury, that decides both the propriety of the warning and the voluntariness of the confession. Some issues in criminal proceedings are issues of law for the court to decide and others are issues of fact reserved for jury determination. The reasonableness of the time allowed to consult with an attorney before deciding whether to submit to a chemical test for alcohol impairment is a legal issue to be decided by the district court. Thus, the court did not err in charging the jury that it had found, as a matter of law, that Koppi had been afforded a reasonable time to consult with a lawyer. Furthermore, as explained above, the court's determination of this legal issue is fully supported by the record.

## DECISION

Because the misstatement of the law was harmless and the district court properly determined that the officer vindicated appellant's right to counsel, appellant's right to due process of law was not violated.

**Affirmed.**