**STATE of Minnesota, Respondent,**

v.

**Fuad Yassin MOHOMOUD, Appellant.**

**No. A09–1969.**

Court of Appeals of Minnesota.

Sept. 14, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Craig S. Nelson, Freeborn County Attorney, David J. Walker, Assistant County Attorney, Albert Lea, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; SHUMAKER, Judge; and HARTEN, Judge.*

## OPINION

SHUMAKER, Judge.

Appellant Fuad Yassin Mohomoud challenges his convictions of driving while impaired, test refusal, and driving after cancellation of his driver's license, arguing that the evidence was insufficient to support the jury's verdicts; the district court erred by allowing the jury to hear an implied-consent recording that contained references to his prior offenses; and the court erroneously instructed the jury on the issue of probable cause. We affirm.

## FACTS

Albert Lea police lieutenant James Carlson was on patrol on March 23, 2008, when he noticed a speeding vehicle approaching him. He activated his radar device and determined that the vehicle was traveling at a rate of 46 miles an hour in a zone posted for a maximum speed of 30 miles an hour.

Carlson stopped the vehicle and determined that the driver was appellant Fuad Mohomoud, who had an insurance card but admitted he had no driver's license. As the men conversed, Carlson smelled the odor of alcohol coming from Mohomoud and asked Mohomoud if he had been drinking. Mohomoud replied that he had consumed about four drinks at a bar.

Carlson then had Mohomoud perform field sobriety tests, noting that Mohomoud had difficulty maintaining his balance on the one-leg-stand and walk-and-turn tests, and Carlson concluded that Mohomoud failed both tests. A horizontal-gaze nystagmus test indicated positive for alcohol consumption, and a preliminary breath test (PBT) registered an alcohol concentration of .151. A backup officer obtained a driver's license check, and Carlson learned that Mohomoud's driver's license had been cancelled as inimical to public safety. Carlson then arrested Mohomoud and took him to a county detention center.

At the detention center, Carlson read the implied-consent advisory to Mohomoud. Thereafter, Mohomoud made telephone calls to two lawyers to seek their advice about whether to take an intoxilyzer

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

test. During one of the conversations, Mohomoud told the lawyer of his prior convictions of driving while impaired. Ultimately, he refused to take the test. The entire implied-consent proceeding, including Mohomoud's statements to the lawyer, was recorded.

The state charged Mohomoud with first-degree driving while impaired, second-degree test refusal, driving after cancellation of his driver's license, and speeding. Mohomoud pleaded not guilty and requested a jury trial. Prior to trial, he stipulated to his prior qualified impaired-driving offenses and to his license cancellation.

Carlson testified to the facts noted above. Additionally, the prosecutor played a DVD recording of the implied-consent proceeding, which included references to Mohomoud's prior convictions. Mohomoud testified in his own defense. He denied speeding and contended that the speed limit where he was driving was 45 rather than 30 miles an hour. He denied drinking alcohol and telling Carlson that he had consumed four drinks. He denied taking a PBT, and he testified that Carlson never told him he had failed the field sobriety tests. He also testified that he did not refuse to take the intoxilyzer test.

The jury found Mohomoud guilty of all charges, and the district court sentenced him only on the first-degree driving-while-impaired conviction.

## ISSUES

1. The state's evidence at trial showed that the appellant's driving conduct consisted only of exceeding the speed limit by 16 miles an hour; that the appellant smelled of alcohol; that he admitted consuming four drinks; that a horizontal-gaze nystagmus test was positive for alcohol consumption; and that he failed two field sobriety tests and a preliminary breath test.

Was this evidence sufficient to support the jury's verdict that the appellant was driving while impaired?

2. The state proposed to offer into evidence a recording of the implied-consent proceeding which contained the appellant's admission that he had three prior qualified impaired-driving offenses, even though the appellant had stipulated to those offenses so as to keep the jury from learning of them. Defense counsel stated that he had no objection to the admission of the recording.

Did the appellant waive reviewable error with respect to the admissibility of this evidence?

3. When instructing the jury as to the elements of the crime of test refusal, the district court stated that for the jury to find probable cause to arrest the appellant, it needed only to determine that the arresting officer could explain the reason he believed probable cause existed.

Was this instruction erroneous?

## ANALYSIS

*Sufficiency of the Evidence*

■■■ In considering a claim of insufficiency of the evidence to support a verdict, this court's review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond

a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004).

It is a crime for a person in Minnesota to drive a motor vehicle while under the influence of alcohol. Minn.Stat. § 169A.20, subd. 1(1) (2006). A person who violates this provision within ten years of the first of three or more prior qualified impaired-driving incidents is guilty of a first-degree offense. Minn.Stat. § 169A.24, subd. 1(1) (2006).

■ After Carlson smelled the odor of alcohol coming from Mohomoud's vehicle and Mohomoud informed Carlson that he had consumed four drinks at a bar, Carlson asked Mohomoud to step out of his vehicle. Carlson requested that Mohomoud perform the horizontal-gaze nystagmus test, which involves watching the suspect's eyes for movement that can provide clues as to whether or not a person is intoxicated. Out of the seven indicators of alcohol-influence associated with this test, Mohomoud registered positive on six of them. Next, Carlson conducted the one-legged stand test. This is a balance test used to provide further clues of intoxication. Carlson determined that Mohomoud failed this test because he put his foot down three times during the test, was swaying, and used his arms for balance. The next test that Carlson conducted was the walk and turn test. This test involves placing the left foot directly in front of the right foot, heel to toe, so there is no gap or air space in between. Carlson determined that Mohomoud failed the test by swaying, stepping off of the line, and using his arms for balance. Following the field sobriety tests, Carlson administered a PBT, which indicated that Mohomoud had an alcohol concentration of .151.

Mohomoud argues that, although the evidence might have been sufficient to estab-lish probable cause, it was inadequate to support a finding of impaired driving beyond a reasonable doubt. He notes that it is not illegal to consume alcohol and then drive a motor vehicle; rather, it is illegal to drive only if alcohol impairs the driver's ability to operate the vehicle. He contends that his driving conduct was merely speeding a few miles an hour over the limit and that such conduct is not indicative of impaired driving because sober drivers also sometimes speed. Mohomoud also disputes the veracity of Carlson's testimony and argues that the evidence as a whole does not support the conclusion that he was impaired.

■ The case squarely presented issues of credibility uniquely within the prerogative of the jury to resolve. *Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982). Although there was no egregious driving conduct here, there was plausible evidence that Mohomoud had consumed four alcoholic beverages and that the alcohol impaired his ability to focus his eyes and affected his balance and coordination. It was not necessary for the state to prove that Mohomoud was drunk; rather the state had to establish beyond a reasonable doubt that the alcohol impaired Mohomoud's ability to drive "in some way or to some degree." *State v. Shepard,* 481 N.W.2d 560, 562 (Minn.1992).

Mohomoud compares his case to *State v. Elmourabit,* 373 N.W.2d 290 (Minn.1985), in which the supreme court affirmed our reversal of Elmourabit's conviction of driving while impaired, holding that the evidence was insufficient to prove that charge. *Id.* at 294. But in that case, there was substantial affirmative evidence that tended to negate the plausibility of the charge and instead pointed to an undiagnosed medical condition that influenced Elmourabit's conduct.

We have no such affirmative evidence here. Instead, we have only Mohomoud's denials of the state's allegations. We hold that the evidence was sufficient to support Mohomoud's conviction of impaired driving.

*Implied–Consent Advisory Recording*

To prevent the jury from learning of his past driving record and of the status of his driver's license, Mohomoud stipulated that he had three prior qualified impaired-driving convictions and that his license had been cancelled. But the DVD recording of the implied-consent advisory and related conversations—which the prosecutor proposed to offer in evidence—contained references to Mohomoud's prior convictions. Specifically, Mohomoud can be heard stating to Carlson, "I just got out of prison"; and "I was in prison for ... my fourth DUI." Carlson then said, "Fuad, you've gone through this before"; and "I've got to read the—probably the same form that was read to you before, the Minnesota Motor Vehicle Implied Consent Advisory." Mohomoud also indicated in a telephone conversation with a lawyer that, "I have for four, but one of them dismissed, so three, I think." He then discussed the dates of his prior convictions, fines, and his prison term.

Before offering the DVD in evidence, the prosecutor discussed its content with defense counsel and the court, and he proposed to start playing the recording at a point after which a police dispatcher had referred to Mohomoud's prior convictions. The court asked defense counsel for his position on the prosecutor's proposal, and counsel stated that he agreed with it:

Yes, Your Honor, I have heard and he discussed this with me. The very first reference, as we agreed, we'd cue up past that first reference. Due to the nature of the software and its inability to edit it—although we'd prefer to have those removed, we also understand it's more work than it's worth and I understand that it's a minor reference. So although we'd prefer to have it out, we don't object to those other statements at this point.

When the prosecutor offered the DVD as an exhibit, defense counsel stated that he had no objection:

PROSECUTOR: Your Honor, the State offers what has been marked previously for identification as Exhibit 2. It is the disc that's in that laptop computer.

THE COURT: Any objection, counsel?

DEFENSE COUNSEL: I have no objection, Your Honor.

THE COURT: Exhibit 2 will be received without objection.

PROSECUTOR: Thank you, Your Honor. May I publish that recording now by showing it to the jury?

THE COURT: Again, any objection, counsel?

DEFENSE COUNSEL: No, Your Honor.

THE COURT: Yes, you may publish it.

The DVD was then played for the jury.

Mohomoud argues that the admission of the recording of his conversations with his attorneys "was plain error because it violated longstanding caselaw requiring suppression of a DWI arrestee's conversations with an attorney pursuant to the implied-consent advisory." He cites *State v. Clark*, 375 N.W.2d 59, 61–62 (Minn.App. 1985), for that proposition. *Clark* did not involve plain-error review or the same issue as is before us now. Rather, the appellate court held that the district court's refusal to allow a DWI defendant to stipulate that his license had been revoked because of a prior DWI conviction was not harmless error.

■ Mohomoud urges that his attorney's failure to object to the admission of the recording at issue does not preclude review under the plain-error doctrine. The general rule is that error in the admission of evidence is not preserved for appellate review unless a proper objection or motion to strike is made. Minn. R. Evid. 103(a)(1). But the appellate court is not precluded from reviewing an alleged error in the admission of evidence despite a party's failure to object or to move to strike if the error is plain error that affects a substantial right of a party. Minn. R. Evid. 103(d); Minn. R.Crim. P. 31.02.

■ The plain-error review standard applies when a party fails to object to the allegedly erroneous admission of evidence. It does not apply when a party intentionally and expressly gives up a known right. In the former instance, it is said that a *forfeiture* of error has occurred; in the latter the result is a *waiver* of error. The United States Supreme Court has explained the distinction: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The Supreme Court noted the significance of the distinction: "Deviation from a legal rule is 'error' unless the rule has been waived.... Mere ·forfeiture, as opposed to waiver, does not extinguish an 'error'...." *Olano*, 507 U.S. at 732–33, 113 S.Ct. at 1777. As an example of waiver, the Supreme Court states that a criminal defendant who knowingly and voluntarily pleads guilty cannot have his conviction vacated on appeal by contending that the trial court erred in not allowing him to have a trial. "[B]ecause the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not 'error.'" *Id.* at 733, 113 S.Ct. at 1777.

The logic of the distinction is compelling. If a party knows of a right and intentionally relinquishes that right, it cannot be said that the trial court erred regarding the subject matter of that right or that there is any error to review on appeal.

Defense counsel here clearly waived Mohomoud's right to have the evidence of his conversation with a lawyer excluded by acknowledging that he heard the recording, discussed it with the prosecutor, and agreed that only the beginning part of the recording would be excluded. He also stated: "[W]e don't object to *those other statements* at this point." (Emphasis added.) When the prosecutor offered the recording, defense counsel said he had no objection. When the prosecutor asked the court's permission to play the recordings, defense counsel said he had no objection. Mohomoud's waiver extinguished any error that might have been predicated on the admission in evidence of the portions of the recording at issue.

The record does not show why it would not have been possible simply to "redact" Mohomoud's conversations with his lawyer by turning the sound off and having the court instruct the jury not to be concerned with the redacted portion.

Finally, the *Olano* court noted that, depending on the right at stake, there can be questions of whether the right is waivable, whether a party must personally waive the right, and whether certain procedures must be followed to effectuate a valid waiver. *Id.* None of those issues has been raised in this appeal. Furthermore, we are not aware of any law that would make the evidentiary right at issue nonwaivable or that requires a personal waiver, or that provides a specific procedure to be followed for an effective evidentiary waiver.

Thus, having acceded to the admissibility of the DVD recording as it was presented to the jury, Mohomoud waived any error that arguably might be predicated on the admission of that evidence.

*Jury Instruction*

 The district court is allowed "considerable latitude" in the selection of language for the jury instructions. *State v. Baird*, 654 N.W.2d 105, 113 (Minn.2002). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001). Generally, when it is not argued that an unobjected-to instruction violated the defendant's right to a jury trial, the instruction is reviewed under the plain-error standard. *State v. Vance*, 734 N.W.2d 650, 655 (Minn.2007). However, an erroneous jury instruction is otherwise reviewed under the harmless-error standard. *State v. Koppi*, 779 N.W.2d 562, 566 (Minn.App.2010), *review granted* (May 18, 2010). The inquiry for the standard involves the effect the error had on the jury's verdict and whether the jury's verdict is "surely unattributable" to the error. *Id.* (quotations omitted).

 Mohomoud relies on this court's decision in *Koppi*, holding that CRIMJIG 29.28 misstates the law of probable cause because the instruction "fails to require that the officer explain the reason for his belief by reference to objective facts and circumstances, as mandated by law of probable cause." *Id.* at 568. The instruction states: " 'Probable cause' means that the officer can explain the reason the officer believes it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol." 10A

*Minnesota Practice*, CRIMJIG 29.28 (Supp.2009). However, we ultimately held in *Koppi* that the error was harmless and therefore a new trial was not required. *Koppi*, 779 N.W.2d at 568. We determined that the error was harmless because

> [i]t can be said beyond a reasonable doubt that the incorrect instruction had no significant impact on the verdict because, despite the instruction, the jury was not left to rely on the officer's subjective belief. Rather, in explaining the reason for his belief that Koppi was impaired, the officer testified to the objective facts that gave him cause to stop Koppi's car.

*Id.*

Although Mohomoud relies on the *Koppi* holding, he contends that the instruction here was reversible error. Mohomoud disputes the "objective facts" that Carlson relied on as support for his belief that probable cause existed, and he argues that he denied he had been drinking, that he told Carlson that he had been drinking, that he failed the sobriety tests, and that he failed a PBT. Thus, Mohomoud claims that the jury "likely never considered Mohomoud's claim that Carlson's explanation was not supported by the actual facts." This distinction, however, is merely a credibility determination, and it is up to the jury to believe or not believe a witness. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) (stating that credibility determinations are best made by the fact-finder and are given great deference on review).

Credibility determinations aside, this case is similar to *Koppi* in that Carlson relied on and explained adequate objective factors that led him to believe that Mohomoud was under the influence of alcohol while operating a motor vehicle. Carlson explained that Mohomoud was driving 46 miles per hour in a 30–mile–per–hour zone; the car rolled unusually far prior to com-

ing to a stop; he smelled an odor of alcohol upon reaching the vehicle; Mohomoud admitted he had been drinking; he performed three field sobriety tests and explained in great detail how Mohomoud failed each, and that Mohomoud failed a PBT.

Based on the record, Carlson adequately explained the objective factors supporting probable cause to believe that Mohomoud was under the influence of alcohol, and any error in the jury instructions was harmless.

## DECISION

The district court did not err by admitting the implied-consent advisory recording after appellant's counsel expressly consented. There is sufficient evidence to support the jury's verdict that Mohomoud is guilty of first-degree DWI, and any error by the district court in misstating the law on probable cause was harmless.

**Affirmed.**