*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2073**

State of Minnesota,
Respondent,

vs.

Luke Vernon Kjono,
Appellant.

**Filed January 3, 2017
Affirmed
Ross, Judge**

Otter Tail County District Court
File No. 56-CR-15-450

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard A. Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Luke Kjono, drunk, fled from police in his car, crashed outside Fergus Falls, ran across a frozen lake, broke into a rural home, found keys in the ignition of another car, stole that car, and then drove back to the bar and called his father to say that his car had

been stolen. Kjono represented himself unsuccessfully at his jury trial on seven criminal charges, including drunk driving and burglary. Kjono appeals his convictions, arguing that the district court's jury instructions essentially directed a guilty verdict on the burglary charge and that the state committed prosecutorial misconduct by failing to prevent an officer from testifying about Kjono's previous drunk-driving convictions. Because Kjono fails to show that the allegedly erroneous instruction was a reversible error, and because the officer's improper testimony did not significantly affect the verdict, we affirm.

**FACTS**

Shortly after midnight in February 2015, Luke Kjono drove away from the Z103 Bar & Grill in Fergus Falls in a manner that left police suspecting that he was intoxicated. He took them on a high-speed chase that ended when he crashed into a ditch. Kjono fled through brush and across a frozen lake, where he happened upon an empty rural house. He found the door unlocked and went inside. Then he made his way into the home's attached garage and saw a Chevy Impala. The keys were in the ignition, and Kjono took the car.

Kjono drove back to Fergus Falls and parked on a street. He walked to a gas station and hitched a ride back to the bar. Eventually, from a hotel connected to the bar, he called his parents and told them his car had been stolen. But Kjono's parents had already been contacted by the police. They urged him to stay put until police arrived. He did. He cleaned up in a hotel restroom, and Officer Brooks Johnson found him at about 3:00 a.m.

Officer Johnson saw that Kjono's eyes were bloodshot and watery, that he had fresh scratches on the back of his hands, that his jeans were stained with blood, and that he smelled of an alcoholic beverage. Kjono said that he had been at the bar from 11:00 p.m.

2

until 3:00 a.m., but the officer knew that the bar closed no later than 2:00. Officer Johnson asked for details, but Kjono's answers were hesitant and vague. The officer arrested him and took him to the Otter Tail County Jail.

Officer Johnson administered field sobriety tests, all of which corroborated his suspicion that Kjono was intoxicated. Kjono agreed to a breath test. Four hours had passed since the chase began. The breath test indicated that Kjono's alcohol content was 0.10.

Sergeant Joseph Axness met with Kjono at the jail the next day and Kjono agreed to speak with him. The sergeant outlined the pre-arrest events, and Kjono offered details. He admitted to drinking "probably about four" beers at home before going to the bar and drinking more. He also admitted that he fled the officer who attempted to stop him.

The state charged Kjono with seven counts: second-degree burglary of a dwelling; theft of a motor vehicle; fleeing a peace officer in a motor vehicle; second-degree impaired driving (under the influence of alcohol); second-degree impaired driving (0.08 within two hours); driving in violation of a restricted driver's license; and fleeing a police officer by means other than a motor vehicle.

Kjono discharged his appointed attorney and proceeded to trial representing himself. He stipulated to having two prior drunk-driving convictions. The district court explained to him that, by so stipulating, the state would not be allowed to discuss the prior convictions at trial.

But at trial, the prosecutor had the following exchange with Officer Johnson:

> Q: Officer Johnson, did you at some point run a driving record
> of the defendant?
> A: Yes, I did.

Q: What -- what [did] you learn when you [ran] the defendant's driving record?
A: That he had previous DWI convictions and that he also had a no use of alcohol or drugs restriction on his driver's license.

The prosecutor introduced an official copy of Kjono's driver's license that showed the no-alcohol-or-drugs restriction. After the officer's testimony concluded, the court called the parties to the bench to discuss the inappropriate prior-drunk-driving testimony. With the parties' consent, the court gave the jury the following instruction:

Folks, you did hear some testimony regarding . . . the defendant's driving record. You should disregard this testimony and rely solely upon the information about the defendant's driving records which I will give you at the conclusion of the trial.

Outside the jury's presence, the prosecutor clarified that she "did not react or ask any further questions relating to [Officer Johnson's drunk-driving comments], knowing that it was an error by him." The court received Kjono's driving record into evidence and redacted it to exclude the drunk-driving convictions, showing only the no-alcohol-or-drugs restriction.

Officer Johnson testified about Kjono's breath test results. He explained that "the average burn-off rate is .015 per hour," indicating that Kjono likely had an alcohol content of up to 0.16 during his flight and up to 0.13 while he drove the Chevy to Fergus Falls.

Kjono testified. He said that he had three beers at the bar but denied drinking at home. On cross-examination, he admitted fleeing police in his vehicle, leaving his car, entering the empty home, taking the car from the garage, and driving it back to town. He admitted to fabricating the story about his car being stolen. Kjono's father testified

4

inconsistently on his behalf. He stated that his son "sound[ed] sober," but also that he sounded like he had been "drinking too much."

The court proposed instructing the jury that "[a] connected structure includes an attached garage," addressing a component of a statutory definition related to the burglary charge. Neither the prosecutor nor Kjono objected to it. During its final jury instructions, the court advised the jury to presume Kjono was innocent and to "disregard all evidence I have ordered stricken or have told you to disregard." When defining the elements of second-degree burglary, it instructed, in relevant part, that to convict, the jury must find that,

> [F]irst, defendant entered a building without consent of the person in lawful possession. A building is a structure suitable for affording shelter for human beings, including an appurtenant or connected structure. A connected structure includes an attached garage.
>
> Second, the building was a dwelling. A dwelling is a building used as a permanent or temporary residence.

The jury found Kjono guilty on all counts. Kjono appeals.

## DECISION

Kjono challenges his convictions on two grounds. He argues first that the district court's instruction that a connected structure includes an attached garage essentially directed a guilty verdict for burglary and constitutes a reversible, structural error. He argues second that the prosecutor committed misconduct by failing to prepare Officer Johnson so as to prevent him from testifying about Kjono's prior drunk driving convictions.

5

# I

Kjono challenges his burglary conviction, claiming error in the district court's instruction that "a connected structure incudes an attached garage." A defendant is entitled to have the elements of the charged offense decided by a jury, even if the evidence is undisputed. *State v. Carlson*, 268 N.W.2d 553, 560 (Minn. 1978). Jury instructions must define the crime charged. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). A district court should explain the elements of the offense rather than simply repeat statutes. *Id.* A district court has considerable latitude in the language of jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). But an instruction that deprives the defendant of the right to have the jury determine every element of the charged offense is not subject to harmless-error analysis and requires reversal. *See State v. Moore*, 699 N.W.2d 733, 738 (2005).

Whoever enters a "building" without consent, intending to commit a crime, or who enters a building without consent and commits a crime while inside, commits second-degree burglary if the building is a "dwelling." Minn. Stat. § 609.582, subd. 2(a)(1) (2014). "Building" is defined as "a structure suitable for affording shelter for human beings including any appurtenant or connected structure." Minn. Stat. § 609.581, subd. 2 (2014). "Dwelling" is defined as "a building used as a permanent or temporary residence." *Id.*, subd. 3. Kjono contends that, because the district court's instruction about the garage made "clear that the building [he entered] was a dwelling," the instruction relieved the jury of its duty to find the "dwelling" element and effectively directed a verdict for the prosecution. He concludes that this is a structural error warranting automatic reversal.

We addressed a claim somewhat similar to Kjono's in *State v. Staeheli*, No. A15-0250, 2016 WL 456804 (Minn. App. Feb. 8, 2016). Our opinion in that case is unpublished, so we mention it only for any reasoning that may help assess Kjono's argument. In *Staeheli*, the district court instructed that "an attached garage is included in the definition of a dwelling." *Id.* at \*2. We held that that instruction essentially directed a verdict for the prosecution because it established the "dwelling" element, thereby constituting structural error, and we reversed. *Id.*

This case differs from *Staeheli*. Here, again, the district court instructed:

> The elements of burglary in the second degree are, first, defendant entered a building without consent of the person in lawful possession. A building is a structure suitable for affording shelter for human beings, including an appurtenant or connected structure. A connected structure includes an attached garage.
>
> Second, the building was a dwelling. A dwelling is a building used as a permanent or temporary residence.

This instruction does not impermissibly establish the "dwelling" element, as it did in *Staeheli*, because it did not tell the jury that a garage is a dwelling. And it left for the jury to find that the building attached to the garage (a house) was a "dwelling"—"a building used as a permanent or temporary residence."

We have rejected an assertion that jury instructions direct a verdict if the jury retains the ability to make key factual determinations. *See, e.g.*, *State v. Koppi*, 779 N.W.2d 562, 570–71 (Minn. App. 2010) (holding that instruction that defendant had been given reasonable amount of time to consult with attorney was not directed verdict because consultation time was not jury question in test-refusal prosecution), *rev'd on other grounds*,

7

798 N.W.2d 358 (Minn. 2011). By contrast, we will reverse a conviction when the instruction removes key factual considerations from the province of the jury. *See, e.g.*, *Moore*, 699 N.W.2d at 737–38 (holding instruction that loss of a tooth is a permanent loss of the function of a bodily member improperly established great-bodily-harm element of assault).

The challenged instruction in context clarifies the definition of "connected structure." An "attached garage" is not given to different meanings. Not all attached garages are dwellings, but all attached garages are connected structures. A "garage" is necessarily a "structure," and "attached" and "connected" are synonyms. An attached garage is, invariably, a structure that shares part of its physical construction with another structure. It is impossible for a garage not to be a structure or for an attached garage to be physically unconnected to the attached structure.

Kjono admits that, despite the challenged instruction, the jury still had "to take two more steps to connect the dots" to decide the element than the *Staeheli* jury had to take after the flawed instruction in that case. But he contends that the effect was the same because it "legally bound the jury to reach the same result." But the "two steps" that Kjono refers to are two essential factual determinations the jury had to make before convicting him of second-degree burglary. For the jury to find a defendant guilty, it must determine that (1) the defendant entered, without consent, a structure suitable for affording shelter for human beings (a "building") or a structure connected to it; (2) the structure was used as a permanent or temporary residence (a "dwelling"); and (3) the defendant committed a crime or intended to commit a crime once inside. The *Staeheli* instruction implied two factual

8

premises: (1) that the garage was attached to a building (a structure fit for human habitation) and (2) that the building was a dwelling. The instruction here implies no element.

The instruction therefore does not appear to be erroneous. But even if it is, Kjono does not make a convincing argument that the alleged error constitutes a structural error. He nevertheless rests his appeal on that contention. He also does not undertake plain-error analysis, as he offers no explanation how the alleged error prejudiced him in light of the overwhelming evidence of his guilt. *See State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (we review unobjected-to jury instructions for plain error and consider whether there was an error, that was plain, and that affected the defendant's substantial rights). Kjono's instruction argument fails.

## II

Kjono claims that the state committed prosecutorial misconduct by failing to prepare Officer Johnson as a witness, resulting in the officer's testifying about Kjono's prior drunk driving convictions. Kjono did not object at the time of the officer's testimony, and we review claims of unobjected-to prosecutorial misconduct under a modified plain-error test. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Kjono can prevail on appeal only if he shows that the prosecutor committed error and that the error was plain. *See id.* If he succeeds, the burden shifts to the state to demonstrate that the misconduct did not affect Kjono's substantial rights. *See id.* If the state fails to carry this burden, we still will reverse only if a new trial is necessary to ensure the fairness, integrity, and public reputation of judicial proceedings. *See id.*

9

We can assume, without deciding, that the state committed plain error here. The state easily carries its burden to show that there is no reasonable likelihood that the misconduct had any significant effect on the verdict. *See Ramey*, 721 N.W.2d at 302. First, the officer's reference to the prior convictions was isolated and brief. Second, the district court conferred with the parties and, with their consent, gave the jury a cautionary instruction to disregard the officer's testimony about Kjono's driving record and instead to rely on the driving record provided during the final instructions. We presume that jurors follow the district court's instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998).

And third, the evidence of Kjono's guilt for driving while impaired was overwhelming. Kjono's only defense to that charge was that he did not "feel" drunk enough to register a 0.10 breath test after his arrest. We do not suppose that a jury will be heavily persuaded to reject a scientific test of a person's intoxication level after hearing from the accused drunk driver that he did not "feel" as intoxicated as the test indicated he was. And Kjono admitted to almost everything else: drinking at home, drinking at the bar, leading police on a high-speed chase, crashing his car, fleeing police on foot, stumbling while he fled, entering someone else's home, taking a car from a garage, and driving back to town and returning to the bar. Jurors also heard from Officer Johnson about Kjono's red, bloodshot eyes, his failed sobriety tests, and Kjono's alcoholic odor. And they learned that the metabolic rate of alcohol in the human body would suggest that Kjono's alcohol level was more likely closer to 0.16 during the chase and 0.13 during his drive back to town. Kjono's only witness, his father, gave conflicting testimony about how Kjono sounded on

the phone, saying both, "He sure sounds sober," and, "By his voice he's been drinking too much."

We have no doubt that the overwhelming evidence that Kjono drove drunk the night of his arrest, not the brief testimony that Kjono drove drunk previously, convinced the jury to find Kjono guilty of driving while impaired.

**Affirmed.**