**STATE of Minnesota, Respondent,**

v.

**John Allen KOPPI, Appellant.**

No. A09–136.

Supreme Court of Minnesota.

June 8, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Thames, Carson, Clelland & Schreder, Brooklyn Center, MN, for respondent.

Mark D. Kelly, St. Paul, MN, for appellant.

## OPINION

STRAS, Justice.

Appellant John Allen Koppi was convicted of second-degree refusal to submit to chemical testing ("test refusal") under Minn.Stat. § 169A.20, subd. 2 (2010). Koppi first argues that the district court abused its discretion in giving the jury an erroneous instruction that articulated a purely subjective definition of probable cause. *See* 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 29.28 (5th ed. Supp.2009). Koppi also contends that the district court erred when it instructed the jury that the court had decided as a matter of law that Koppi had a reasonable amount of time to contact an attorney before deciding whether to submit to chemical testing. Because the district court's instruction to the jury included an incorrect, purely subjective definition of probable cause and the instructional error was not harmless beyond a reasonable doubt, we reverse.

## I.

At approximately 12:40 a.m. on July 4, 2008, Officer Joshua Hunter observed a pickup truck traveling at 66 miles per hour in a 55 mile-per-hour speed zone on County Road 30 in the City of Corcoran. Officer Hunter stopped the pickup truck, and then identified Koppi as the driver. According to Officer Hunter, Koppi's "eyes were a red, glossy, bloodshot color" and the officer "could also smell a slight odor of an alcoholic beverage coming from [Koppi's] person." After Officer Hunter asked Koppi to exit the vehicle, Koppi swayed from "side to side a little bit" as he accompanied Officer Hunter to the rear of the truck. Koppi refused to perform any field sobriety tests, and according to Officer Hunter, became upset during the encounter. Officer Hunter responded affirmatively when asked at trial whether he believed, "based on [his] training and experience as a police officer and [his] personal experience and observations, and the defendant's refusal to complete any of the field sobriety tests ... as well as [his] observations of the defendant," that Koppi was under the influence of alcohol. On cross-examination, however, Officer Hunter testified that he did not observe Koppi's

truck cross the center or fog lines along the highway; that in 95% of arrests for driving under the influence of alcohol, the driver emits a moderate to strong odor of alcohol, rather than a slight odor; and that Koppi's speech was not slurred.

After taking Koppi into custody and transporting him to the police station, Officer Hunter gave Koppi the Minnesota Implied Consent Advisory, which informs suspects that refusing to consent to chemical testing is a crime. In response, Koppi stated that he wished to contact an attorney. At 1:05 a.m., Officer Hunter provided Koppi with a telephone and 10 to 15 phone books. Koppi then requested his reading glasses, which another officer retrieved from Koppi's truck and delivered to him by 1:20 a.m. During the ensuing 45 minutes, Koppi left voicemails with two attorneys and his wife. When Officer Hunter returned at 2:05 a.m., he observed Koppi casually flipping through the phone books. Officer Hunter asked Koppi whether he would agree to a chemical test, but Koppi repeatedly requested additional time to contact an attorney. When Koppi failed to respond to three or four requests for a final decision regarding whether he would submit to chemical testing, Officer Hunter concluded that Koppi had refused the test.

The State charged Koppi with third-degree driving while impaired, Minn.Stat. §§ 169A.20, subd. 1(1), 169A.26 (2008), and second-degree test refusal, Minn.Stat. §§ 169A.20, subd. 2 (2010), 169A.25 (2008). Before submitting the case to the jury, the district court provided the parties with copies of several jury instructions. Koppi objected to two of the proposed instructions. First, Koppi argued that the proposed jury instruction defining probable cause, based upon the 2008 version of CRIMJIG 29.28, improperly articulated a subjective definition of probable cause.

The court overruled Koppi's objection and used CRIMJIG 29.28 to instruct the jury on probable cause. Second, Koppi objected to the court's instruction that it had decided as a matter of law that Koppi had a reasonable amount of time to contact an attorney. After overruling Koppi's objection, the court informed the jury: "As the judge in this case, I've already decided that defendant was provided with a reasonable amount of time to contact an attorney."

The jury returned verdicts of guilty on the charge of test refusal and not guilty on the charge of driving while impaired. On the former count, the court sentenced Koppi to 365 days in the workhouse, with 320 days stayed, and a $300 fine. The court stayed the sentence to permit Koppi time to appeal his conviction, but placed him on probation with numerous conditions.

The court of appeals affirmed Koppi's conviction for test refusal, holding that although the 2008 version of CRIMJIG 29.28 erroneously articulated a subjective standard of probable cause, the error was harmless. *State v. Koppi,* 779 N.W.2d 562, 568 (Minn.App.2010). The court of appeals further concluded that the district court did not err when it decided as a matter of law that Officer Hunter gave Koppi a reasonable amount of time to contact an attorney. *Id.* at 570–71. We granted Koppi's petition for review.

## II.

We first address Koppi's argument that the district court erred when, in instructing the jury on the charge of test refusal, the court defined probable cause as provided in the 2008 version of CRIMJIG 29.28. We review a district court's decision to give a requested jury instruction for an abuse of discretion. *See State v. Hall,* 722 N.W.2d 472, 477 (Minn.2006).

Jury instructions, reviewed in their entirety, must fairly and adequately explain the law of the case. *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). A jury instruction is erroneous if it materially misstates the applicable law. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001).

### A.

■ "It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)." Minn.Stat. § 169A.20, subd. 2. The plain language of section 169A.20, subdivision 2, in turn, incorporates the requirement from section 169A.51 that an officer may request that a person submit to a chemical test when the officer "has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired.[1] Minn.Stat. § 169A.51, subd. 1(b) (2010). Refusing a chemical test is not a crime, therefore, unless it can be proven beyond a reasonable doubt that an officer had "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired. *Id.*

■ Koppi argues that the instruction given to the jury at his trial on the element of probable cause was erroneous because it improperly articulated a purely subjective standard for probable cause. In evaluating whether the jury instruction in this case was erroneous, the threshold question is whether probable cause is a subjective or objective inquiry. Probable cause under section 169A.51, subdivision 1(b), exists "whenever there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or was operating" or was in physical control of a motor vehicle while impaired. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972), *quoted in Knapp v. Comm'r of Pub. Safety*, 610 N.W.2d 625, 628 n. 6 (Minn. 2000). The existence of probable cause depends on "the particular circumstances, conditioned by [officers'] own observations and information and guided by the whole of their police experience." *State v. Olson*, 436 N.W.2d 92, 94 (Minn.1989), *aff'd sub nom. Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (citation omitted). We have recognized that the police may interpret circumstances in a way that differs from ordinary citizens. *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn.1987) (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Accordingly, because an officer's training and experience is the lens through which the fact-finder must evaluate the reasonableness of an officer's determination of probable cause, probable cause incorporates the individual characteristics and intuitions of the officer to some extent. *See Olson*, 436 N.W.2d at 94 (stating that "the whole of

---

1. To put it another way, an officer must have probable cause that a suspect is driving, operating, or in physical control of a motor vehicle while impaired in violation of Minn.Stat. § 169A.20, subd. 1. Under that provision, there are several ways to show that a person is impaired, including when such person is "under the influence of alcohol," "under the influence of a controlled substance," or when a person's blood alcohol concentration exceeds the legal limit. Minn.Stat. § 169A.20, subd. 1. The State argued in this case that the officer had probable cause to believe that Koppi was driving while impaired because he was driving while under the influence of alcohol. For consistency, we will refer to the probable cause requirement using the more general phrase "driving while impaired," rather than the more specific requirement applicable to the facts of this particular case of driving "under the influence of alcohol."

police experience" is relevant in determining whether there was probable cause).

■ Nonetheless, "[t]he reasonableness of the officer's actions is an *objective* inquiry," even if reasonableness is evaluated in light of an officer's training and experience. *State v. Hardy,* 577 N.W.2d 212, 216 (Minn.1998) (emphasis added) (citation omitted). The actual, subjective beliefs of the officer are not the focus in evaluating reasonableness. *See State v. Speak,* 339 N.W.2d 741, 745 (Minn.1983) (holding that relevant inquiry for a probable cause analysis is "whether there was objective probable cause, not whether the officers subjectively felt that they had probable cause"). Rather, the probable cause standard asks whether the totality of the facts and circumstances known would lead a reasonable officer "to entertain an honest and strong suspicion" that the suspect has committed a crime. *State v. Harris,* 589 N.W.2d 782, 791 (Minn.1999) (quoting *State v. Carlson,* 267 N.W.2d 170, 173 (Minn.1978)). Answering that question is "an objective, not subjective, inquiry." *State v. Riley,* 568 N.W.2d 518, 523 (Minn.1997).

### B.

■ In accordance with the language of the 2008 version of CRIMJIG 29.28, the district court instructed the jury that "[p]robable cause means that the officer can explain the reason the officer believes it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol." *See* 10A Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Criminal,* CRIMJIG 29.28 (5th ed. Supp.2009). The instruction contains three flaws. First, it does not require the officer to recite actual observations and circumstances supporting a finding of probable cause. Second, it fails to

include the requirement that the jury evaluate the totality of the circumstances from the viewpoint of a reasonable police officer. Third, the instruction erroneously requires that an officer believe a driver "was more likely than not" driving while impaired, a standard that is at odds with case law on probable cause requiring only an "honest and strong suspicion" of criminal activity. *See Harris,* 589 N.W.2d at 791. We will address each of these flaws in turn.

The first flaw is that the jury instruction fails to require an officer to articulate the specific observations and circumstances that support a finding of probable cause. Under the plain language of the jury instruction, the probable cause element of test refusal is satisfied if the officer can state the reason for his or her belief that the suspect was driving while impaired. If an officer were to testify that he or she had a gut feeling that the defendant was driving while impaired, the jury instruction would arguably be satisfied because the officer was able to "explain the reason" why the officer believed probable cause existed. *Cf. State v. Hardy,* 577 N.W.2d 212, 216 (Minn.1998) ("Mere suspicion is insufficient to establish probable cause."). This aspect of the instruction is erroneous because the law requires the fact-finder to evaluate probable cause based on the totality of the facts and circumstances; it is not sufficient that the officer can simply "explain the reason" why he or she believed there was probable cause to request a chemical test from a suspect.

The second flaw is that CRIMJIG 29.28 does not require the jury to determine whether a reasonable police officer would find probable cause that Koppi was driving while impaired. The instruction permitted the jury to take Officer Hunter at his word that he believed Koppi was driving while impaired. As stated above, however, what matters is whether "there was objective

probable cause, not whether the officers subjectively felt that they had probable cause." *Speak*, 339 N.W.2d at 745. A properly instructed jury must consider whether the totality of the facts and circumstances would lead a reasonable officer to entertain an honest and strong suspicion that Koppi was "driving, operating, or in physical control of a motor vehicle" while impaired. *See* Minn.Stat. § 169A.51, subd. 1(b).

The third flaw is that we have rejected the standard of probable cause used in the jury instruction—that it is more likely than not that the suspect has committed a crime. *See Harris*, 589 N.W.2d at 791. Rather, probable cause requires that, under the totality of the circumstances, "a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *State, Lake Minnetonka Conservation Dist. v. Horner*, 617 N.W.2d 789, 795 (Minn.2000) (citation omitted) (internal quotation marks omitted). The "honest and strong suspicion" standard requires more than mere suspicion, but less than the evidence required for a conviction. *See id.; see also Illinois v. Gates*, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). The "more likely than not" standard was an incorrect statement of the law because probable cause "is incapable of precise definition or quantification into percentages [as] it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769

(2003). The district court therefore erred by giving the jury an erroneous standard by which to evaluate the totality of the circumstances surrounding Koppi's arrest.

The court of appeals stated that CRIMJIG 29.28 (2008) "only implies the correct law of probable cause." *Koppi*, 779 N.W.2d at 568. In our view, CRIMJIG 29.28 does not even "imply" the correct standard because it is an erroneous statement of the law in three significant respects. Accordingly, we hold that the district court abused its discretion in instructing the jury on the probable cause element of test refusal in accordance with the language of CRIMJIG 29.28.[2]

### C.

The use of an erroneous jury instruction by the district court, however, does not automatically entitle Koppi to a new trial. A properly objected-to instructional error regarding an element of an offense requires a new trial only " 'if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict.' " *State v. Valtierra*, 718 N.W.2d 425, 432 (Minn.2006) (quoting *State v. Olson*, 482 N.W.2d 212, 216 (Minn. 1992)). But here, the seriousness of the instructional error and the conflicting nature of the evidence supporting probable cause require reversal of Koppi's conviction and remand for a new trial.

A literal reading of the 2008 version of CRIMJIG 29.28 instructs the jury that the probable cause element of test refusal is satisfied if the testifying officer can articulate *any* reason that the officer "believes it

---

**2.** We decline Koppi's invitation to rewrite the language of CRIMJIG 29.28. It is "[t]he duty of the trial judge ... to instruct the jury on the rules of law which they must apply in arriving at their verdict." *State v. Jones*, 556 N.W.2d 903, 915 (Minn.1996) (Tomljanovich, J., concurring). As such, our usual practice is that jury instruction guides "are prepared by experienced trial judges to assist judges in fashioning instructions that are a correct statement of the law." *Id.* (emphasis added).

was more likely than not" that the defendant was driving while impaired. It does not require the officer to articulate the facts and circumstances supporting that belief, nor does it require the jury to determine whether the officer's belief was objectively reasonable. In this case, the jury instruction deviates so substantially from applicable law that it is difficult to determine the impact of the erroneous instruction on the jury, particularly where the element of probable cause was fervently disputed by the parties at trial. *See State v. Vance,* 765 N.W.2d 390, 394–95 (Minn.2009) (holding that an instructional error was not harmless where one of the two theories supporting an aggravating factor "materially misstated the law"); *State v. Gebremariam,* 590 N.W.2d 781, 784 (Minn.1999) (stating that a "fundamentally incorrect definition of the basic elements of the charged crime—'dangerous weapon' and 'great bodily harm' "—was not harmless).

Even so, we must evaluate the evidence presented at trial to determine whether the instructional error was harmless beyond a reasonable doubt. Specifically, the question is whether the evidence points so overwhelmingly in favor of probable cause that we can say beyond a reasonable doubt that the instructional error had no significant impact on the verdict. *See State v. Larson,* 787 N.W.2d 592, 601–02 (Minn. 2010) (holding that any alleged error in jury instructions on intent was harmless due to overwhelming evidence); *State v. Medal–Mendoza,* 718 N.W.2d 910, 919 (Minn.2006) (holding that an erroneous jury instruction regarding a defendant's flight was harmless because the case against the defendant was "very strong" and flight was not a critical issue at trial); *State v. Hayes,* 431 N.W.2d 533, 536 (Minn.1988) (holding that a jury instruction that improperly defined aiding and abetting was harmless because the State

presented strong evidence on those elements).

To be sure, a properly instructed jury could have found that probable cause existed. As Officer Hunter testified, Koppi had bloodshot eyes, emitted a slight odor of alcohol, became upset, and was "kind of swaying side to side a little bit" when walking toward the back of his truck. But that is not the only conclusion supported by the evidence. On cross-examination, Officer Hunter testified that in 95% of arrests for driving while under the influence of alcohol, the suspect emits a moderate to strong odor of alcohol, rather than a slight odor. Officer Hunter also testified that Koppi did not slur his speech at any time during their encounter. Officer Hunter further admitted that he did not observe Koppi's vehicle touch the center or fog lines prior to the stop, and Koppi's only suspicious driving behavior was driving 66 miles per hour in a 55 mile-per-hour speed zone. This conflicting evidence does not overwhelmingly point toward a finding of probable cause that Koppi was driving or operating a motor vehicle while impaired.

In concluding the error in this case was harmless, the dissent claims that "[t]he question for review is whether the officer had probable cause to believe that Koppi was driving under the influence." Because "[t]he probable cause standard does not require proof by a preponderance of the evidence," the dissent's view is that "the only conclusion that can be reached is that the officer had probable cause." But the dissent thoroughly dismantles a claim that is inapplicable here by incorrectly framing the question before us. When a district court incorrectly instructs the jury on an element of an offense, we must determine whether the instructional error was harmless beyond a reasonable doubt, not whether the evidence presented at tri-

al was sufficient to support a jury finding with respect to the element of the offense on which the jury was erroneously instructed. *See, e.g., State v. Blasus,* 445 N.W.2d 535, 541 (Minn.1989) ("Where error may have prejudiced a close factual case, this court will order a new trial, even if the evidence is otherwise sufficient to support the verdict."); *State v. Wofford,* 262 Minn. 112, 120, 114 N.W.2d 267, 272 (1962) (holding that where an error "might be expected to substantially prejudice the jury against the defendant, it should not be disregarded on the ground that the record contains sufficient other evidence to sustain the conviction"). Put another way, the question is not "whether the officer had probable cause to believe that Koppi was driving under the influence," but whether the evidence of Koppi's impairment was so *overwhelming* that we can say beyond a reasonable doubt that the instructional error was harmless.[3] In concluding otherwise, the dissent's analysis overlooks the fact that the jury never had an opportunity to evaluate probable cause under the correct legal standard. The harmless error analysis applicable to this case, however, accounts for that fact by requiring us to review the evidence with greater scrutiny. Indeed, the dissent fails to reference even a single case involving instructional error subject to harmless error review.

Accordingly, because of the equivocal nature of the evidence presented at trial with respect to the probable cause element of test refusal and the seriousness of the errors in the jury instruction defining probable cause, we cannot say that the jury instruction was harmless beyond a reasonable doubt. We therefore reverse the court of appeals and hold that the district court's erroneous jury instruction entitles Koppi to a new trial on the test refusal charge.

### III.

Koppi further contends that the district court abused its discretion by deciding as a matter of law that Koppi had a reasonable amount of time to contact an attorney before deciding whether to submit to a chemical test. We conclude, however, that Koppi has failed to properly preserve this argument. Koppi's petition for review addressed only one issue: whether he was entitled to a new trial because the jury instructions misstated the applicable law on probable cause. Generally, we do not address issues the petitioner fails to raise in a petition for further review because such a failure waives the issue on appeal. *State v. Finnegan,* 784 N.W.2d 243, 248 n. 3 (Minn.2010). A finding of waiver is particularly appropriate in cases like this one in which the legal issue is not dispositive of the case,[4] and our

---

3. The dissent also exaggerates our holding by arguing that our analysis is a "marked departure" from our case law on probable cause. In reviewing whether the instructional error in this case was harmless, we do not adopt any new "rigid, technical" rules regarding probable cause. Nor do we hold that erratic driving behavior is always required for an officer to have probable cause that a suspect is driving while impaired. We simply conclude that the evidence regarding probable cause was not so overwhelming that we can say beyond a reasonable doubt that the serious instructional error in this case was harmless. *See, e.g., State v. Dillon,* 532 N.W.2d

558, 558 (Minn.1995) ("What is relevant in harmless error impact analysis is how strong the evidence was, not whether it was 'sufficient.' ").

4. Furthermore, the interests of justice do not provide a basis for review because, in addition to the fact that this issue is not dispositive of the case, the court of appeals adequately addressed Koppi's argument with respect to his right to consult with an attorney prior to submitting to a chemical test. *See Koppi,* 779 N.W.2d at 571.

order granting review does not address the omitted issue. Under these circumstances, we hold that Koppi has waived his argument regarding whether the district court abused its discretion by concluding as a matter of law that Koppi had a reasonable amount of time to consult with an attorney.

## IV.

For the foregoing reasons, we hold that the district court abused its discretion in instructing the jury on probable cause in accordance with the language of CRIMJIG 29.28. Because we cannot say that the instructional error was harmless beyond a reasonable doubt, we reverse Koppi's conviction for test refusal and remand for further proceedings consistent with this opinion.

Reversed and remanded.

DIETZEN, Justice (dissenting).

Because the majority's conclusion that the jury instruction was not harmless beyond a reasonable doubt rests on the erroneous premise that there is a reasonable possibility the instruction had a significant impact on the test-refusal verdict, I respectfully dissent. To explain my dissent, I will examine the applicable standard of review and the probable cause standard, and will then apply those standards to the facts of this case.

An erroneous jury instruction merits a new trial if we cannot say " 'beyond a reasonable doubt that the error had no significant impact on the verdict.' " *State v. Valtierra,* 718 N.W.2d 425, 433 (Minn. 2006) (quoting *State v. Olson,* 482 N.W.2d 212, 216 (Minn.1992)). A new trial is not required when we are satisfied that the erroneous jury instruction "did not play a role in influencing the jury to convict and that the defendant clearly would have been convicted of the same offense if the trial court had correctly instructed the jury." *State v. Hayes,* 431 N.W.2d 533, 536 (Minn.1988). Thus, under this standard, we examine whether the error was harmful in the sense that there is a reasonable possibility that a properly-instructed jury would have reached a different result.

The question for review is whether the officer had probable cause to believe that Koppi was driving under the influence. This is because Koppi was convicted of test refusal and the test refusal statute requires only that the officer have "probable cause to believe the person was driving" under the influence. Minn.Stat. § 169A.51, subd. 1(b) (2010); *see also* Minn.Stat. § 169A.20, subd. 2 (2010) (noting that it is a crime to refuse a test under section 169A.51); Minn.Stat. § 169A.51, subd. 1(b) ("The test may be required of a person when an officer has probable cause to believe the person was driving ... while impaired.").

Probable cause is an objective standard that is met when "the facts would lead a person of ordinary care and prudence to entertain an honest and strong suspicion" that a crime has been committed. *State v. Carlson,* 267 N.W.2d 170, 173 (Minn.1978); *see also State v. Harris,* 589 N.W.2d 782, 791 (Minn.1999). In other words, "the facts present must justify more than mere suspicion but less than a conviction." *Carlson,* 267 N.W.2d at 174; *see also Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (explaining that, if the standard for determining a defendant's guilt were applied to the question of probable cause, "few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end").

In applying the probable cause standard, a court "should view the circum-

stances in light of the whole of the arresting officer's police experience as of the time of the arrest." *Carlson,* 267 N.W.2d at 174. "Each case must be determined on its own facts and circumstances." *Id.* at 173–74. A court does not look at the facts in isolation, but examines them together. *See State v. Harris,* 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972) (evaluating the totality of the circumstances observed by the officer to determine whether probable cause existed). And it matters not that the officer turns out later to have been incorrect. *See State v. Johnson,* 314 N.W.2d 229, 230 (Minn.1982) ("The fact that it later turns out that the officers were wrong does not mean that they did not have probable cause at the time they made their assessment."). This is "[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous" and so "room must be allowed for some mistakes on their part." *State v. Harris,* 265 Minn. 260, 265, 121 N.W.2d 327, 331 (1963) (citation omitted) (internal quotation marks omitted).

This standard "is a practical, nontechnical conception affording the best compromise that has been found for accommodating" the competing interests of protecting the privacy of individuals and protecting the community through enforcement of the law. *Id.* at 265, 121 N.W.2d at 331. Therefore, it should not be applied in an "unduly technical" manner. *Carlson,* 267 N.W.2d at 174.

Applying that standard here, I would conclude that the only reasonable conclusion, based on the officer's testimony and the facts of this case, was that the officer indeed had probable cause to believe Koppi was driving while impaired. The arresting officer testified that he observed Koppi speeding and Koppi appeared to accelerate away from the officer. Based on these observations, the officer effectuated a traffic stop. When he spoke to Koppi, the officer saw that Koppi's eyes were bloodshot and Koppi smelled of alcohol. The officer also saw that Koppi's balance was impaired as the officer watched Koppi sway from side to side as he walked to the rear of his vehicle. Based on these facts, the officer asked Koppi to submit to a test to determine whether he was, in fact, under the influence. Koppi refused and was subsequently charged with driving under the influence in violation of Minn.Stat. § 169A.20, subd. 1, and test refusal in violation of Minn.Stat. § 169A.20, subd. 2.

The majority properly acknowledges that Officer Hunter's direct, factual testimony of Koppi's indicia of impairment satisfied the objective probable cause standard, and therefore a properly instructed jury could have found that probable cause existed. Indeed, this conclusion is supported by well-established precedent.[1] In

1. *See, e.g., Quimby v. State,* 351 N.W.2d 629, 632 (Minn.1984) (upholding probable cause determination when the officer observed alcohol on Quimby's breath, a flushed face, bloodshot eyes, a swaying walk, and thick speech); *Johnson v. State, Dep't of Pub. Safety,* 351 N.W.2d 2, 5 (Minn.1984) (explaining that there are numerous signs of intoxication and that one can be intoxicated without exhibiting all of the signs and holding that Johnson's post-accident slow driving and his swaying back and forth as he walked into the restaurant satisfied the objective probable cause standard); *Harris,* 295 Minn. at 41–42, 202 N.W.2d at 880–81 (upholding probable cause when the officer smelled the odor of alcohol, Harris swayed as he walked, and Harris was asleep behind the wheel of the car); *Swapinski v. Comm'r of Pub. Safety,* 368 N.W.2d 322, 323 (Minn.App.1985) (upholding probable cause determination when the officer observed a speeding violation, "a 'fairly strong' odor of alcohol," and "Swapinski had a 'little problem' alighting from his truck"), *rev. denied* (Minn. July 26, 1985); *Giddings v. Comm'r Pub. Safety,* 354 N.W.2d 579, 581 (Minn.App.1984) (upholding a probable cause

concluding that Koppi is entitled to a new trial, the majority focuses its analysis on the wrong question. Specifically, the majority cites to the following testimony to support the conclusion that Koppi was not, in fact, guilty of driving under the influence: (1) the odor of alcohol was "slight," whereas "in 95% of arrests for driving under the influence of alcohol, the driver emits a moderate to strong odor of alcohol;" (2) Koppi's speech was not slurred; (3) and the officer did not observe Koppi's vehicle touch or cross the center or fog lines. The question before this court is not whether the evidence was sufficient to support a conviction for driving under the influence. The jury already determined that Koppi was not guilty of that charge, and the question of Koppi's guilt on that charge is not before us. Therefore, this analysis is flawed.

Moreover, the majority's analysis departs from our well-settled, "practical, nontechnical conception" of probable cause. *Harris*, 265 Minn. at 265, 121 N.W.2d at 331 (citation omitted) (internal quotation marks omitted). The majority concludes that there is doubt as to whether there was probable cause to believe Koppi was under the influence because the officer did not observe erratic driving behavior. But the officer did not stop Koppi because the officer observed driving behavior that caused the officer to believe Koppi was under the influence. The officer stopped Koppi for speeding. It was only after the officer approached the vehicle, saw Koppi's bloodshot eyes, and smelled alcohol upon talking to Koppi that the officer's investigation turned to the question of Koppi's impairment. As will commonly be the case, probable cause for driving under the influence may arise *after* the officer stopped the car. But the majority's analysis emphasizes the absence of indicators of impairment *before* the cause for suspicion arose. In doing so, the majority creates an impractical standard for the assessment of probable cause—that officers must observe indicia of intoxication before stopping the car in order to have probable cause to believe that a driver is intoxicated.

Further, the logical consequence of the majority's impractical standard for the assessment of probable cause is that police officers in Minnesota must now ignore other indicia of alcohol consumption indisputably present in this case—bloodshot eyes, the odor of alcohol, and impaired balance. In doing so, the majority creates a rigid, technical definition of what constitutes probable cause. This rule is a marked departure from existing precedent, and I cannot subscribe to it.[2]

---

determination when the officer observed a speeding violation, bloodshot eyes, balance problems, a "fruity" odor on Giddings' breath, and Giddings admitted drinking alcoholic beverages). To the extent that the majority's analysis can be read as requiring some form of erratic driving, the analysis is a marked departure from existing precedent.

2. The majority contends that because I "fail[ ] to reference even a single case involving instructional error subject to harmless error review," that I have "incorrectly fram[ed] the question." But, in this part of its analysis, the majority cites cases that involve evidentiary errors, not errors in jury instructions. *See supra* at 365–66 (citing *State v. Blasus*, 445

N.W.2d 535, 541 (Minn.1989), and *State v. Wofford*, 262 Minn. 112, 120, 114 N.W.2d 267, 272 (1962)). Elsewhere in its analysis, the majority cites the well-settled standard we apply to consider whether jury instruction errors require a new trial. *See supra* at 365 (citing *State v. Larson*, 787 N.W.2d 592, 601 (Minn.2010) ("An erroneous jury instruction is harmless if, beyond a reasonable doubt, the instruction had no significant impact on the verdict rendered.") (citations omitted)). A new trial is not warranted under that standard. The error "had no significant impact on the verdict" because the only reasonable conclusion that can be reached, assuming of course that we apply the definition of proba-

The majority's focus on what it characterizes as the "equivocal nature of the evidence" that can be drawn from the evidence likewise ignores the proper probable cause standard enunciated in our precedent. The probable cause standard does not require proof by a preponderance of the evidence. *See Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in" the probable cause decision.). The United States Supreme Court made this distinction very clear in *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The Court described the "difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt." *Id.* at 174, 69 S.Ct. 1302. The Court concluded that if the standards for determining a defendant's guilt were applied to the question of probable cause, "few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end." *Id.* We accepted as "correct" the *Brinegar* Court's formulation of the probable cause standard almost 50 years ago. *Harris,* 265 Minn. at 264, 121 N.W.2d at 331. The majority's new formulation of the probable cause standard is at odds with this precedent.[3]

Finally, the fact that the officer was wrong about Koppi driving under the influence, as he apparently was in this case based on the jury's verdict, is not relevant to the question of probable cause. *See Johnson,* 314 N.W.2d at 230. The probable cause standard requires only that a reasonable police officer have an "honest and strong suspicion" that the driver was operating his vehicle while under the influence. *Carlson,* 267 N.W.2d at 173. When the evidence is assessed under the proper formulation of probable cause, the only conclusion that can be reached is that the officer had probable cause. Specifically, the officer saw the driver speeding and accelerating away from the officer. The driver smelled of alcohol and his eyes were bloodshot. The driver was unsteady on his feet, as demonstrated by the fact that he swayed from side to side as he walked. Considering all of this evidence together, the conclusion that the officer had probable cause is inescapable. I therefore would conclude that the error in the jury instruction was harmless and would affirm the conviction.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Dietzen.

---

ble cause that we have used for almost 50 years, is that the officer had probable cause. *Id.* The jury instruction error therefore was harmless.

**3.** The majority asserts that I have "exaggerate[d]" its holding. To be clear, the majority has now concluded that even though Koppi smelled of alcohol, had bloodshot eyes, and his balance was impaired, there is nonetheless reasonable doubt as to whether there was probable cause to believe he was driving under the influence. The majority's new formulation of probable cause injects uncertainty into our probable cause jurisprudence. It is

no exaggeration to say that I am deeply concerned about the impact that this uncertainty will have on the ability of law enforcement to address the ever-increasing danger presented by those who choose to drive on Minnesota roads while they are under the influence of alcohol or other illegal substances. *Cf. Bendorf v. Comm'r of Public Safety,* 727 N.W.2d 410, 416–17 (Minn.2007) (noting that "drunken drivers pose a severe threat to the health and safety of the citizens of Minnesota" and that "[t]he state has a compelling interest in highway safety justifying efforts to keep impaired drivers off the road" (citation omitted)).