*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0176**

State of Minnesota,
Respondent,

vs.

Kevin Charles Owens,
Appellant.

**Filed December 5, 2016
Affirmed
Reilly, Judge**

Scott County District Court
File No. 70-CR-13-13081

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Reilly, Judge; and Toussaint, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant asks us to reverse his conviction of second-degree test refusal, arguing that the district court committed instructional error and that the test-refusal statute is unconstitutional. We affirm.

## FACTS

Just before midnight on July 2, 2013, Prior Lake Patrol Officer Darcy White was on duty, driving north on Highway 13 in a marked squad car. A vehicle with expired tabs was traveling northbound in front of Officer White's squad car. Officer White confirmed that the vehicle's registration was expired and observed the vehicle's right tires touch the fog line twice as the vehicle "weav[ed]" within its lane. She then performed a traffic stop of the vehicle.

Officer White approached the vehicle and spoke with its driver and sole occupant, appellant Kevin Charles Owens, through its partially open front driver's side window. Although Owens claimed to have a valid driver's license, Officer White learned that his license had been revoked. As she conversed with Owens, Officer White smelled "an odor of alcoholic beverage coming from him." Owens did not fully open the front driver's side window despite Officer White's repeated directions to "roll [his window] all the way down" and to "roll [his] window down the rest of the way."

Officer White opened the front driver's side door and directed Owens to get out of the vehicle; Owens moved slowly and "kind of swayed" as he got out. Owens sat on the front bumper of the squad car after being instructed to do so by Officer White, but he

"stared straight ahead" when Officer White attempted to administer the horizontal gaze nystagmus test. Owens did not answer when Officer White asked him whether he would take any of her field sobriety tests, and he refused to take a portable breath test (PBT). Officer White then placed Owens under arrest for driving while impaired (DWI), based on "[t]he driving conduct, odor of alcohol, and the refusal to do the field sobriety tests that [were] offered," and she transported Owens to the county jail.

At the jail, Officer White read to Owens the standard implied-consent advisory, throughout which Owens stated that he wanted to speak with an attorney. But when Officer White provided Owens with a phone and phone books, Owens "crossed his arms and just sat there." After about ten minutes, during which Owens made no attempt to contact an attorney, Officer White asked Owens to take a breath test. Owens responded only by repeatedly stating that he needed a public defender. Officer White took Owens's response as a refusal and administered no chemical test.

Respondent State of Minnesota charged Owens with second-degree test refusal, second-degree DWI, and driving after revocation (DAR). After multiple continuances occasioned by Owens's health problems and the supreme court's pending decision in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), *aff'd sub nom. Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), the state voluntarily dismissed the DAR charge, and the remaining charges proceeded to a jury trial on August 26, 2015. At trial, the state introduced evidence including Officer White's testimony, a video and audio recording of the traffic stop (squad-car video), and an audio recording of the implied-consent procedures. The jury found Owens guilty of second-degree test refusal and not guilty of second-degree DWI. The

3

district court adjudicated Owens guilty of second-degree test refusal and sentenced him to 365 days in the county jail, with 275 days stayed, for an effective sentence of 30 days in jail and 60 days' electronic home monitoring.

Owens appeals.

## DECISION

Owens first argues that the district court committed reversible error by instructing the jury on the elements of second-degree test refusal. According to Owens, the instruction was inadequate because it misdefined "probable cause" as relevant to an element of second-degree test refusal.

Appellate courts "review a district court's jury instructions for an abuse of discretion." *State v. Huber*, 877 N.W.2d 519, 522 (Minn. 2016). "The district court enjoys considerable latitude in selecting jury instructions and the language of those instructions." *Id.* "But the jury instructions must fairly and adequately explain the law of the case and not materially misstate the law." *Id.* Appellate courts "review the jury instructions as a whole to determine whether they fairly and adequately explain the law." *Id.*

Owens and the state agree that Owens did not object below to the district court's probable-cause instruction and that we therefore should apply the plain-error standard on our review of that instruction. On plain-error review, an appellant must establish that "(1) there was an error; (2) the error was plain; and (3) the error affected his substantial rights." *State v. Robertson*, 884 N.W.2d 864, 875 (Minn. 2016). "If [the appellant] fails to establish that the claimed error affected his substantial rights, [an appellate court] need not consider the first two factors." *Id.*

4

As Owens underscores, to convict a defendant of second-degree test refusal, the state must prove beyond a reasonable doubt that a peace officer had probable cause to believe that the defendant was driving while impaired. Minn. Stat. §§ 169A.20, subd. 2, 169A.51, subd. 1 (2012); *State v. Koppi*, 798 N.W.2d 358, 361-63 (Minn. 2011). Such "[p]robable cause . . . exists whenever there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving . . . while impaired." *Koppi*, 798 N.W.2d at 362 (quotation omitted).

"The existence of probable cause depends on the particular circumstances, conditioned by officers' own observations and information and guided by the whole of their police experience." *Id.* (quotation and citation omitted). For this reason, "probable cause incorporates the individual characteristics and intuitions of the officer to some extent." *Id.* Yet "[t]he actual, subjective beliefs of the officer are not the focus in evaluating reasonableness." *Id.* at 363. Instead, "the probable cause standard asks whether the totality of the facts and circumstances known would lead a reasonable officer to entertain an honest and strong suspicion that the suspect has committed a crime." *Id.* (quotation omitted). But "[a]nswering that question is an objective, not subjective, inquiry." *Id.* (quotation omitted).

Thus, on a charge of second-degree test refusal, "[a] properly instructed jury must consider whether the totality of the facts and circumstances would lead a reasonable officer to entertain an honest and strong suspicion that [the defendant] was driving . . . while impaired." *Id.* at 364 (quotation omitted). In *Koppi*, the supreme court concluded that the district court abused its discretion in instructing the jury on the probable-cause element of

5

criminal test refusal, reasoning in part that the instruction "fail[ed] to include the requirement that the jury evaluate the totality of the circumstances from the viewpoint of a reasonable police officer." *Id.* at 363. There, "the district court instructed the jury that probable cause means that the officer can explain the reason the officer believes it was more likely than not that the defendant drove . . . a motor vehicle while under the influence of alcohol." *Id.* at 363 (quotation omitted).

Here, the district court instructed the jury as follows:

> Probable cause means that the officer, based upon the officer's observations, information, experience and training, can testify to the objective facts and circumstances in this particular situation that gave the officer cause to stop the defendant's motor vehicle and the further objective observations that led her to believe that the defendant was driving a motor vehicle while under the influence of alcohol.

Citing *Koppi*, Owens argues that "[t]his instruction was erroneous because it did not require the jury to evaluate the totality of the circumstances from the viewpoint of a reasonable police officer in determining whether . . . [O]fficer [White] had probable cause to believe Owens was driving while impaired."

The parties cite no published case applying the relevant *Koppi* holding, and our research has revealed no such case. As noted by the state, at least two unpublished cases suggest that the instruction here may pass muster. *See State v. Skinaway*, No. A11-2187, 2012 WL 6652582, at *6-7 (Minn. App. Dec. 24, 2012) (concluding that the probable-cause instruction, which was functionally identical to the instruction here, "was not plainly erroneous"), *review denied* (Minn. Mar. 19, 2013); *State v. Schmuhl*, No. A11-566, 2012 WL 1813278, at *5-6 (Minn. App. May 21, 2012) (holding that "the district court did not

6

err in its probable-cause instruction," which was functionally identical to instruction here), *review denied* (Minn. Aug. 7, 2012). Yet at least one, more recent unpublished case indicates that the instruction here is plain error in light of *Koppi*. *See State v. Anderson-Chapman*, No. A12-0849, 2013 WL 2459920, at *2-3 (Minn. App. June 10, 2013) (citing *Koppi* and concluding that the probable-cause instruction, which was functionally identical to the instruction here, "was error, and because the instruction contravenes case law, the error was plain"), *review denied* (Minn. Oct. 15, 2013). In any event, these conflicting cases are not precedential. *See* Minn. Stat. § 480A.08, subd. 3 (2014) ("Unpublished opinions of the Court of Appeals are not precedential.").

The cases track the evolution of the relevant CRIMJIG. *Compare* 10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2009) ("'Probable cause' means that the officer can explain the reason the officer believes it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol."), *with* 10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2010) ("'Probable cause' means that the officer, based upon the officer's observations, information, experience, and training, can testify to the objective facts and circumstances in this particular situation that gave the officer cause to stop the defendant's motor vehicle and the further objective observations that led him to believe that the defendant was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol."), *and* 10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2012) ("'Probable cause' means that the officer testified to the objective facts and circumstances that led the officer to have an honest and strong suspicion that the defendant was driving, operating, or in physical control of a motor

7

vehicle while under the influence of alcohol. You must evaluate the totality of those circumstances from the viewpoint of a reasonable officer, considering the arresting officer's observations, experience, and training."). And the current version of the relevant CRIMJIG has been refined as follows:

> In order to find that the officer had "probable cause," you must first look at the totality of the circumstances leading to the stop, based upon the objective facts and circumstances testified to by the arresting officer, as well as the officer's training and experience. If you find those circumstances would lead a reasonable officer to have an honest and strong suspicion that the defendant was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol, then the arresting officer had probable cause.

10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2014).

In this case, the probable-cause instruction mirrors the 2010 version of the relevant CRIMJIG, although the 2012 and 2014 versions were available to the district court at the time of trial. Of course, "[CRIMJIGS] merely provide guidelines and are not mandatory rules; jury instruction guides are instructive, but not precedential or binding on this court," *State v. Kelley*, 734 N.W.2d 689, 695 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007), or on the district court. *State v. Gunderson*, 812 N.W.2d 156, 162 (Minn. App. 2012). "When the plain language of the statute conflicts with the CRIMJIG, the district court is expected to depart from the CRIMJIG and properly instruct the jury regarding the elements of the crime." *Gunderson*, 812 N.W.2d at 162 (citing *Koppi*, 798 N.W.2d at 364-66). And "[a]n instruction is not necessarily insulated from being plain error because it follows the applicable CRIMJIG." *Id.*

8

Yet we need not and do not consider whether the probable-cause instruction was plainly erroneous, because we conclude that any error in the instruction did not affect Owens's substantial rights. Officer White testified that she observed Owens driving a vehicle that was "weaving" within its lane to the extent that its right tires touched the fog line twice and that, after stopping the vehicle, she smelled an odor of alcohol coming from Owens. Officer White also testified that Owens failed to comply with her repeated instructions to fully lower his front driver's side window, lied about having a valid driver's license, "kind of swayed" as he got out of the vehicle, and would not participate in field sobriety testing. Finally, Officer White testified that she had 15 years' experience in law enforcement; that she had made "[o]ver 300" DWI arrests; and that "[i]n [her] training and experience," a person's driving conduct, odor of alcohol, and refusal to comply with field sobriety testing "can be added together" to support a conclusion that "th[e] person is probably under the influence of alcohol." Much of Officer White's testimony was corroborated by the squad-car video. In light of this evidence, we see no reasonable likelihood that at least one juror would have entertained a reasonable doubt on the probable-cause element of criminal test refusal were it not for any instructional error.

We acknowledge that the supreme court concluded in *Koppi* that an erroneous probable-cause instruction entitled the appellant to a new trial on a charge of criminal test refusal, 798 N.W.2d at 366, but *Koppi* is distinguishable on both legal and factual grounds. In *Koppi*, the defendant objected below to the test-refusal statute, and the supreme court accordingly performed harmless-error review. *Id.* at 361, 366. The standard of proof discussed in *Koppi*, i.e., proof beyond a reasonable doubt that the instructional error was

9

harmless, has no application on this plain-error review. *See id.* at 365-66; *State v. Little*, 851 N.W.2d 878, 887-88 (Minn. 2014) (stating that on harmless-error review "the State bears the burden of showing that [constitutional] error was harmless beyond a reasonable doubt," while on plain-error review the appellant must prove "a reasonable likelihood that the error had a significant effect on the verdict, regardless of whether the error resulted in a constitutional violation"). Furthermore, the instruction in this case referred to "the objective facts and circumstances in this particular situation" and the officer's "objective observations," while the instruction in *Koppi* contained no such reference. *See* 798 N.W.2d at 363. And here, unlike in *Koppi*, no evidence was presented that the odor of alcohol coming from Owens was slight as compared with a moderate or strong odor in the vast majority of DWI cases. *See id.* at 365. Our conclusion in this case—that any instructional error is not grounds for reversal—is consistent with the supreme court's opposite conclusion in *Koppi*.

Owens also claims that the test-refusal statute "violates the state and federal constitutional rights to due process of law and the doctrine of unconstitutional conditions by criminalizing a driver's refusal to consent to a presumptively unreasonable, warrantless search" of his breath. But Owens himself acknowledges that his constitutional claims hinge on the proposition that a driver has a right to refuse to take a warrantless breath test following a lawful arrest for DWI. And the Supreme Court recently held that with breath testing, a driver has no such right. *See Birchfield*, 136 S. Ct. at 2172, 2186 (stating that "[i]f . . . warrantless [breath tests] comport with the Fourth Amendment, it follows that a State may criminalize the refusal to comply with a demand to submit to the required

10

testing," and concluding that a warrantless breath test is a permissible search incident to a lawful arrest for DWI); *State v. Bennett*, 867 N.W.2d 539, 543 (Minn. App. 2015) (concluding that "[appellant] cannot proceed with his claim that the [test]-refusal statute violates the unconstitutional-conditions doctrine," reasoning that "[t]he warrantless breath test that [appellant] refused would *not* have been an unconstitutional search" (quotation omitted)), *review denied* (Minn. Oct. 28, 2015), *cert. denied sub nom. Bennett v. Minnesota*, 136 S. Ct. 2542 (June 28, 2016). Owens's constitutional claims are foreclosed by controlling precedent, and we give them no further consideration here.

**Affirmed.**