*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0798**

State of Minnesota,
Respondent,

vs.

Mickela Joy Vredenburg,
Appellant.

**Filed May 13, 2024
Affirmed
Ross, Judge**

Olmsted County District Court
File No. 55-CR-21-7111

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Police encountered Mickela Vredenburg, apparently impaired, causing a disturbance near her former boyfriend's home before later seeing her car driving away from the area. Police momentarily lost sight of the car, but soon saw it parked and found

Vredenburg walking nearby with the key to the car in her pocket. Police arrested her on suspicion of impaired driving and the state charged her with chemical-test refusal. Vredenburg appeals from her test-refusal conviction, arguing that admitting evidence of statements provided by a bystander violated both the evidentiary rule prohibiting hearsay and Vredenburg's constitutional right to confront witnesses who testify against her. She also argues that the prosecutor misled the district court and committed misconduct in multiple ways. Because the alleged hearsay statements were admissible for reasons other than for the truth of the matters asserted, we reject Vredenburg's hearsay and Confrontation Clause arguments. And because none of the prosecutor's challenged behavior constitutes misconduct, we reject her unfair-trial arguments. We therefore affirm.

**FACTS**

Shortly before midnight on an evening in November 2021, a man reported to Rochester police that his former girlfriend, Mickela Vredenburg, was outside his house yelling and hitting his front door. Officers arrived and found Vredenburg. They noticed that she smelled of an alcoholic beverage, she slurred her speech, and her balance was unstable. An officer offered to drive Vredenburg home, but she declined. She told the officers that she had not driven there and that she had already arranged for a ride. She walked away.

Officers left but were soon dispatched to return. Vredenburg was at the house again, this time reportedly banging her head against the back door. Police did not find her at the house. But they knew she drove a black Ford Edge, and about a block away an officer saw a car of that description speeding past. The officer turned onto a different street, attempting

to intercept the Ford. She soon found the Ford parked on the street, empty and situated partially in the grass, near two townhomes.

The officer stopped immediately behind the Ford and beside a bystander who was standing in the street. She got out and asked the bystander, "Did you see where that woman went?" The bystander, who lived nearby, said, "Yeah, she went right straight through there," pointing between two townhomes. The officer walked in the indicated direction but did not immediately find Vredenburg. She returned to the bystander and questioned her further about what she had seen, asking for a description of the driver.

Meanwhile, other officers found Vredenburg walking in a direction away from where the officer had found her parked car. Vredenburg denied that she had been driving, but the officers were not persuaded. They arrested her on suspicion of drunk driving, and, searching her after the arrest, found the key to the parked Ford.

An officer took Vredenburg to the Olmsted County detention center, read her the implied-consent advisory, and asked her to consent to a breath test. Vredenburg said that she wanted to speak with an attorney, and the officer provided her with a phone and telephone books to do so. Vredenburg unsuccessfully attempted to contact two different attorneys. After Vredenburg indicated that she would be unable to reach an attorney, the officer asked if she would submit to a breath test, and Vredenburg said that she would not submit to a test until she spoke with an attorney. The officer characterized Vredenburg's response as a refusal to test.

The state charged Vredenburg with various offenses, all of which the state later dismissed except third-degree refusal to submit to a chemical test. Before trial, Vredenburg

3

objected to the state's intent to admit the bystander's statements as evidence. The prosecutor represented that the statements would not be admitted for the truth of their content but as proof of an element of the test-refusal offense—that the circumstances authorized police to ask Vredenburg to submit to a breath test, specifically, probable cause to suspect that she had been driving while impaired. The district court overruled Vredenburg's objection.

During trial, Vredenburg renewed her objection to the admission of evidence of the bystander's first statements to police. During closing arguments to the jury, the prosecutor addressed Vredenburg's argument that she had not actually refused to test when she repeatedly told the officer that she would not submit to a test until she spoke with her attorney. Contending that Vredenburg's refusing to test until she reached an attorney while knowing that she could not reach one was tantamount to test refusal, the prosecutor characterized Vredenburg's contrary argument as a "magic loophole," sort of like his daughter refusing to do her homework until she was given candy. Vredenburg did not contemporaneously object but, after the argument, asked the district court for the opportunity to make a surrebuttal argument to respond. The district court denied the request. The jury found Vredenburg guilty of test refusal.

Vredenburg appeals.

**DECISION**

Vredenburg appeals from her conviction of refusal to submit to a chemical test. She maintains that the district court improperly admitted the bystander's statements, violating the hearsay rule and her constitutional right to confront witnesses testifying against her.

4

She also contends that the prosecutor committed misconduct by misleading the court, misstating evidence, vouching for a witness's credibility, and disparaging Vredenburg's defense. Her arguments do not persuade us to reverse.

**I**

We are unconvinced by Vredenburg's challenge to the district court's decision to admit evidence of the bystander's statements to the officer. Vredenburg is correct that hearsay statements are generally inadmissible at trial. *See* Minn. R. Evid. 802. She is also correct that, relatedly, testimonial out-of-court statements are generally not admissible unless the defendant has an opportunity to cross-examine the declarant. *See* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *State v. Sutter*, 959 N.W.2d 760, 764–65 (Minn. 2021). But these prohibitions are inapplicable here. An out-of-court statement repeated at trial is not hearsay unless it is offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). And identically, "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9; *see also Andersen v. State*, 830 N.W.2d 1, 9 (Minn. 2013). Vredenburg's evidentiary and constitutional challenges to the district court's decision to admit evidence of the bystander's out-of-court statements therefore fails if the statements were admissible for some other reason.

We have no difficulty concluding that the challenged statements were offered for some purpose other than the truth of the matter asserted. The supreme court has explained that "[r]efusing a chemical test is not a crime . . . unless it can be proven beyond a reasonable doubt that an officer had 'probable cause to believe the person was driving,

5

operating, or in physical control of a motor vehicle' while impaired." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) (quoting Minn. Stat. § 169A.51, subd. 1(b) (2010)). The bystander's statements to the officer supported the officer's suspicion that Vredenburg had just driven the car that the officer found parked. Officers may rely on eyewitness statements to establish reasonable suspicion to detain or probable cause to arrest. *See City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 888, 891 (Minn. 1988) (holding that police had "sufficient information to reasonably suspect that the driver of the car in question was intoxicated" based on a gas-station attendant's report to police "that he had observed an intoxicated driver leave the gas station"). The bystander's statements about Vredenburg exiting the car and walking away from it were therefore admissible to prove a circumstance that establishes probable cause to suspect her of impaired driving. In other words, the bystander's statement that Vredenburg was driving was not offered as substantive evidence that she was in fact driving, but to support the conclusion of police that they had probable cause to believe that she had been. Because the statements were admissible to provide the officer's basis for probable cause, which is a purpose other than the truth of the matter asserted, it was not subject to exclusion by either the rule prohibiting hearsay or the Confrontation Clause.

We observe that the prosecutor arguably misapplied the bystander's properly admitted statement. During the state's closing argument, the prosecutor told the jury, "We also know from eyewitness testimony that she was driving. [The bystander] saw a woman matching Ms. Vredenburg's description." The more precise and proper argument should have been that "We also know *that the officers confirmed* from eyewitness testimony that

6

she was driving." This framing would more precisely fit the element of probable cause. By arguing what "we" know, one might construe the prosecutor's argument as treating the bystander's out-of-court statement as supporting the truth of the matter asserted (that Vredenburg had in fact been driving the car) rather than supporting the admissible proof of the element (that the officers had reason to believe that Vredenburg had in fact been driving the car). *See Koppi*, 798 N.W.2d at 362. But even so, the minor unobjected-to prosecutorial infraction does not change the admissible nature of the statement.

Equally dispositive, we are certain that the prosecutor's characterization could not have affected Vredenburg's substantial rights. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (establishing that plain error leads to reversal only if the error affected the defendant's substantial rights). This is because convincing the jury that the matter asserted—that Vredenburg was indeed the person driving the car—was not an element of the crime at issue at trial. We add finally that, even if the jury could find her guilty only if she was the driver, still the plain error would not lead us to reverse because of the same overwhelming evidence proving both that she was the driver and that the officers had reason to believe it. Again, the officers had just encountered Vredenburg impaired at her former boyfriend's house, they followed her car from the area, they immediately saw the car parked haphazardly, they determined that Vredenburg is the car's registered owner, they located her walking from where the car was parked, and they found the key to the car in her pocket. The fact that a witness saw a woman matching her description leaving the car adds very little.

## II

Vredenburg contends that the state committed prosecutorial misconduct in various ways. She did not object to the alleged misconduct at trial, so we review the contention under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). If the defendant identifies an error that is plain, the burden shifts to the state to establish that the error did not affect the defendant's substantial rights. *Id.* None of Vredenburg's challenges survive under this standard, and our careful review informs us that her accusation that the prosecutor engaged in "egregious" misconduct that "violated the clear commands of rules, caselaw, and ethical standards" is grossly overblown.

Vredenburg argues that the prosecutor misled the district court in two ways. She maintains that, when the prosecutor secured the district court's permission before trial to admit evidence of the bystander's statements to police, he referenced only the first statement when the officer arrived at the parked car, not the later statement. According to Vredenburg, the second statement constituted "much more extensive inadmissible, testimonial hearsay" because "for the first time [the bystander] described the fleeing woman as the driver of the black Ford." The argument fails for lack of substance. Vredenburg offers nothing other than her bare assertion to support her accusation that the prosecutor intentionally "misled" the court by treating the statements as separate. The two statements occurred during a discussion between the same officer and the same witness involving the same incident, and they were captured only minutes apart on the same body-worn camera. One might therefore reasonably consider and refer to the "two" statements as constituting a single witness statement. And contrary to Vredenburg's premise, both

8

statements included substantially the same relevant content. In the first statement, the bystander told the officer that "she went right straight through there," implicitly referencing the driver of the Ford behind which the officer had just stopped her squad car and near which the bystander and the officer both stood. The bystander's so-called second statement provided essentially the same information, which is that it was a woman who fled from the recently parked Ford. Vredenburg fails to convincingly support her assertion that the prosecutor misled the district court. We add that nothing in the record suggests that the district court perceived the prosecutor's handling of this evidence to be "misleading" or "deception" or to reflect a "lack of candor" to the court.

Vredenburg also maintains that the prosecutor intentionally misled the district court before trial by misrepresenting that he would introduce "just a summary of the 911" calls in his opening statement, because his opening statement then included "dramatized" details and quotes of what the caller reported. Vredenburg asserts that the opening statement "went far beyond the 'summary' he said he would give." This behavior, she contends, was "particularly egregious." The contention exaggerates. We do not see how one can provide a summary of a 9-1-1 emergency call without including some of its details. That the prosecutor quoted content from the 9-1-1 call does not render his prior representation that he would provide the jury a summary of it either false or misleading.

The prosecutor's closing argument did misstate a detail. The prosecutor paraphrased the bystander's description of the fleeing person as being "a tall, young woman," when the bystander had actually said only that the woman was "tall." We do not view the addition of this mistaken, insignificant detail as evidence that the prosecutor intended to deceive,

and the fact that he next immediately replayed the bystander's full, actual statement for the jury belies any implication of it.

Also unpersuasive is Vredenburg's argument that the prosecutor "committed misconduct by personally assuring the jury that he had proved an element of the offense." She says that he did so by telling the jury "that Officer Christenson had correctly read Ms. Vredenburg the implied consent advisory," thereby both "vouch[ing] for the credibility of Officer Christenson and convey[ing] the prosecutor's personal opinion on evidence against Ms. Vredenburg." But again, the prosecutor contemporaneously played for the jury the video recording depicting the officer's reading of the implied-consent advisory, showing that the reading was in fact correct. Characterizing the officer's reading as "correct" and then directing the jury's attention to the supporting video evidence is proper argument, not improper "vouching" of a witness's credibility.

Vredenburg cites another, similarly trivial incident of supposed prosecutorial misconduct. She contends that "the prosecutor gave a parable regarding a child and gummy worms to illustrate that Ms. Vredenburg's request for counsel prior to testing was childish and spurious." The contention misrepresents the prosecutor's argument. We do not read the "parable" as intending to suggest that Vredenburg's "request for counsel prior to testing was childish and spurious." In context, the prosecutor's gummy-worms analogy instead sought to dissuade the jury from accepting Vredenburg's defense, which was that she had actually been requesting an attorney rather than refusing to submit to a breath test. Nor do we see the prosecutor's brief reference to his own child in the analogy as an attempt to curry favor with the jury by improper personalization.

10

Vredenburg finally argues unconvincingly that the prosecutor unfairly disparaged her defense during his rebuttal argument. The prosecutor concluded the candy "parable" by criticizing Vredenburg's defense argument. He reasoned that the defense's notion that Vredenburg had not really refused to perform the breath test when she said she would not submit to one until she spoke with an attorney at a time when she knew she could not reach an attorney depended on a nonexistent "magic loophole" in the law. Vredenburg's argument on appeal that the "magic loophole" reference is improper argument reveals a misunderstanding of the judicial rule prohibiting prosecutors from improperly disparaging defense arguments. A prosecutor may "vigorously argue" the state's case. *State v. Peltier*, 874 N.W.2d 792, 804 (Minn. 2016). For that reason, "prosecutors are given considerable latitude during final argument and . . . they are not required to make a colorless argument." *State v. Ives*, 568 N.W.2d 710, 714 n.1 (Minn. 1997). A prosecutor is free to argue that the defendant's particular defense lacks merit; he is prohibited only from denigrating categories of defenses in the abstract. *State v. Salitros*, 499 N.W.2d 815, 818 (Minn. 1993). The prosecutor here was disparaging only Vredenburg's particular argument, not a type of argument or general class of argument. The prosecutor's colorful attack on Vredenburg's defense theory therefore does not constitute prosecutorial misconduct.

**Affirmed.**